PEOPLE *ex rel.* LEO *et al.* v. HILL *et al.*

(*Supreme Court, Special Term, New York County.* February 6, 1891.)

1. MILITIA—DISBANDMENT OF COMPANIES—CONSTITUTIONAL LAW.
    The provision of the Military Code of New York, that the commander in chief shall have power, *inter alia*, to disband companies of the national guard whenever, in his judgment, the efficiency of the state force will be thereby increased, is not in conflict with Const. N. Y. art. 11, § 5, prescribing the manner in which commissioned officers shall be removed.

2. SAME—POWERS OF CONGRESS.
    Nor is it in conflict with Const. U. S. art. 1, § 8, empowering congress to call forth the militia and provide for their government while in the service of the United

States, for Rev. St. U. S. § 1630, provides that the "militia of each state shall be arranged into divisions   *   *   *   and companies, as the legislature of the state may direct."

**3. SAME—DISCHARGE OF COMMISSIONED OFFICERS.**
One who received his commission when Military Code N. Y. §§ 7, 44, (Laws 1883, c. 299,) were in force, providing for disbanding organizations of the milita, and rendering their officers supernumerary, is chargeable with knowledge of those provisions, and cannot complain of the subsequent disbandment of his company.

**4. SAME—NOTICE AND HEARING.**
Military Code N. Y. § 49, providing that commissioned officers of the militia shall not be discharged except after notice and hearing, does not apply where the discharge results from the disbandment of a company by the commander in chief.

**5. CERTIORARI—TO GOVERNOR AS COMMANDER IN CHIEF.**
The writ of *certiorari* will not be granted by a single judge sitting at special term to review the action of the governor, as commander in chief, in disbanding a company of the militia under the provisions of the New York Military Code

Application for writ of *certiorari*.

*William C. Reddy,* for relators.    *C. F. Tabor,* Atty. Gen., for the Governor. *Almet F. Jenks,* for the Adjutant General.

ANDREWS, J.    This is an application for a writ of *certiorari*, made upon notice to the respondents, the object of which is to obtain a review of an order made by the governor of this state, as commander in chief of the military forces, on October 10, 1890, disbanding Company I of the twenty-second regiment of the National Guard.    The only question to be determined now is whether the court should grant the writ, so that the relators can apply to the general term of this court for such review.    Upon the hearing of the application the governor appeared specially by the attorney general for the purpose of objecting to the jurisdiction of the court to review his action, either in the capacity of governor or commander in chief of the state militia.    The adjutant general and assistant inspector general also appeared by the judge advocate general, and objected to the granting of the writ on various grounds.    The statute of this state known as the "Military Code" provides that the commander in chief shall have power to alter, divide, annex, consolidate, disband, or reorganize the several divisions, brigades, regiments, battalions, troops, batteries, and companies of the national guard, whenever in his judgment the efficiency of the state forces will be thereby increased.    Under this statute the question whether Company I of the twenty-second regiment ought to have been disbanded was to be determined by the commander in chief alone, and the fact that he made the order in question raises the presumption that he did so because it was his judgment that the efficiency of the state forces would be thereby increased; and, if said statute is a valid law, the decision of the commander in chief cannot be reviewed by the courts, for the reason that the exercise by a public officer of a discretionary power, such as is given by the legislature to the commander in chief in this matter, is never subject to review by the courts. *People* v. *Walter,* 68 N. Y. 403; *People* v. *Commissioners,* 82 N. Y. 358; *People* v. *Commissioners,* 100 N. Y. 82, 2 N. E. Rep. 613.    If, therefore, the statute in question is a valid law, it would be useless to grant a writ of *certiorari,* because it is certain that the general term would not review the action of the commander in chief in disbanding said company.

It is claimed, however, that the statute is invalid, because it conflicts with the constitutions of this state and of the United States, and also with certain acts of congress.    I have examined the various objections raised against the validity of the provisions of the statute which authorize the disbandment of military organizations, and none of them seems to me to be well founded.    It is claimed that such provisions conflict with that part of section 5, art. 11, of the constitution of this state, which prescribes the manner in which commissioned officers may be removed.    This question, however, has been heretofore raised twice in this state, and in each case the decision of the courts was adverse to the contention of the relator.    *People* v. *Scrugham,* 25 Barb. 217;

*People* v. *Ewen*, 17 How. Pr. 375. It is also claimed that the statute conflicts with section 8, art. 1, of the constitution of the United States, which empowers congress to provide for calling forth the militia of the several states, in certain cases, and for organizing, arming, and disciplining such militia, and for governing such part of them as may be employed in the service of the United States. It is, however, well settled that "state laws for organizing and disciplining the militia are valid, except as they may conflict with national legislation." Cooley, Const. Lim. (5th Ed.) p. 25; *Houston* v. *Moore*, 5 Wheat. 1; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Gilman* v. *Philadelphia*, 5 Wall. 713; *Dunne* v. *People*, 94 Ill. 125. But the statute in question not only does not conflict with national legislation, but is expressly authorized by it, for section 1630 of the United States Revised Statutes provides that "the militia of each state shall be arranged into divisions, brigades, regiments, battalions, and companies, as the legislature of the state may direct." The other provisions of the section as to the manner of organizing the militia are permissive merely, and it is only when the militia is called into the actual service of the United States that "it is to be organized as in the regular service." Sections 1645–1647. Moreover, upon the merits, neither of the relators is in a position to complain of the provisions of the Military Code of this state, which authorized the commander in chief to disband his company. The relator Leo received his commission in 1885, and at that time sections 7 and 44 of the Military Code (chapter 299, Laws 1883) contained provisions for the disbandment of organizations of the militia, and the rendering their officers supernumerary; and substantially the same provisions had been upon the statute-book for many years previous. *People* v. *Scrugham, supra*, pp. 224–226. Said relator must therefore be deemed to have known, when he took the office, that he might be deprived of it by the disbandment of his company. The relator Stryker also is chargeable with knowledge of the provisions of the statute, and, although he may have enlisted for a definite term, he must have been aware that his company might be lawfully disbanded, and that he might thus be prevented from serving the full term for which he enlisted, and thereby obtaining exemption from jury duty. Nor is the objection well founded that Stryker could not be discharged except after notice and a hearing, for section 49 of the Military Code, which provides for such notice and hearing, applies to those cases only where the discharge is made upon the recommendation of the commanding officer of the troop, battery, or company, and has no application to a case like the present one, where the discharge results from the disbandment of a company.

It may, however, be said that, although the special term of this court is fully convinced that the provisions of the Military Code, which authorizes the commander in chief to disband organizations of the national guard, is a valid law, it should grant the writ, and thus enable the relators to have the questions involved passed upon by the general term of this court, and, if the relators should see fit, by the court of appeals and the supreme court of the United States. There are several answers to this proposition. In the first place, the granting or refusal of the writ is discretionary with the court, (Code Civil Proc. § 2127,) and if the court is entirely satisfied that some of the questions raised by the relators have been repeatedly decided by the courts adversely to their contention, and that the other questions are free from doubt, it would seem to be a proper exercise of the discretion of the court to decline to grant the writ. In the second place, the relators can bring such questions before the general term either by an appeal from an order denying their application, or by another application for a writ, to be made directly to the general term itself. In the third place, the question of the legal right of the governor of this state, acting as commander in chief, to make the order which disbanded the company of the relators, cannot be reviewed by means of a writ of *certiorari* without issuing such writ directly to the governor himself.

The adjutant general and the assistant inspector general are merely the agencies employed by the commander in chief, pursuant to military law and usage, in promulgating and carrying out the order. If the court has jurisdiction to review the action of the commander in chief in making the order, and the relators should be successful, it would seem to be the duty of the court to annul the order in question, and to require the commander in chief and other military officers to recognize the disbanded company as one of the companies of the twenty-second regiment and to accord to such company, its officers, and men, the same rights and privileges that are accorded to the other companies of that regiment. If the court should undertake to exercise such powers, I do not see how its action could be made effective, unless the writ should be issued to the governor, and he be thereby made a party to the proceeding. It is, to say the least, extremely doubtful whether the court has jurisdiction to grant such a writ directed to the governor. The assumption of such jurisdiction by the court in time of war, insurrection, or riot might paralyze the military authorities of the state, and lead to intolerable confusion and mischief; but, if such jurisdiction exists at all, it could be exercised under those circumstances as well as under those existing in the present case, and that fact is certainly a strong argument against the existence of such jurisdiction. The learned and industrious counsel for the relators have not referred me to any case in which a writ of *certiorari* has been issued to the governor of a state. Reference is made to the case of *People* v. *Mayor*, 19 Hun, 441; *People* v. *Cooper*, 21 Hun, 517, and *In re Nichols*, 6 Abb. N. C. 474. But that was a case in which it was said that the governor acted judicially in approving the removal of a civil officer by the mayor of New York city, and that the court had jurisdiction to review the decision of the governor by means of a writ of *certiorari;* but no writ was issued to the governor in that case, and what was said upon the subject of the power of the court by the judge at special term was entirely *obiter*, and cannot be regarded as a binding authority. Besides, it would by no means follow that, if the court did have jurisdiction to review the decision of the governor in that case, it would have jurisdiction to review a military order made by the governor as commander in chief. The learned attorney general states in his brief that some years since a special term of the supreme court issued, *ex parte*, a writ of *certiorari* to his excellency, Gov. Robinson, for the purpose of reviewing his action in dismissing one Cocheu from the military service. Gov. Robinson declined to make any return to this writ, but sent a respectful communication to the court, denying its jurisdiction to inquire into his executive acts in such a manner; and no further proceedings were had in the case. The attorney general also states that an application was made, upon notice, to the special term of the supreme court in the eighth district, for a writ of *certiorari* for the purpose of reviewing the action of Gov. Hoffman in removing one Shaw from the office of commissioner of the Niagara frontier police. The then attorney general appeared, and protested that the court did not have jurisdiction to grant the writ, and the application was denied. It is also stated that the above two are the only cases in which it can be ascertained that applications for writs of *certiorari* directed to the governor have been made in this state, and it is further stated that not a single precedent can be found in the jurisprudence of the country where an attempt has been made to review, in such a manner, the action of the executive department, either of the state or of the general government. The attorney general also cites a number of cases in which it has been held that a writ of *mandamus* would not be issued to compel the performance of executive duties; but there are other cases in which the contrary view has been taken. Cooley, Const. Lim. (5th Ed.) p. 138, note 3. There can be no question but that most of the duties imposed upon the governor are of an executive or ministerial character, performed under the direct authority of the constitution, and of valid acts of the legis-

lature, and that his acts in the performance of such duties cannot be reviewed by the courts; but the precise question raised in the present case, whether the courts can review an act done by the governor as commander in chief, under authority not given by the constitution itself, but by an act of the legislature, which, it is claimed, is void because it is in conflict with the constitutions of the state and of the United States and with acts of congress, does not appear to have been heretofore decided or considered by the courts. In view of the fact that, with the two exceptions above mentioned, no precedent for an application of this character can be found; of the decisions and reasoning of the courts in cases where it has been held that *mandamus* would not lie to compel the performance of executive duties; of the undoubted rule of law that the executive and ministerial acts of the governor done under the direct authority of the constitution itself and of valid acts of the legislature cannot be reviewed by the courts; and of the many and serious objections to any attempt on the part of the courts to review the acts of the governor as commander in chief, even though done under a statute which, it is claimed, is void,—I think that a writ of *certiorari* directed to the governor ought not to be granted in the present case; certainly not by a single judge sitting at special term. For this reason, and the others hereinbefore set forth, the application will be denied, with costs, but without prejudice to the right of relators to renew the application to the general term of this court if they shall see fit to do so, instead of appealing from the order to be entered pursuant to this opinion.