## EX PARTE RIGGS.

1. CERTIORARI.—This Court has original jurisdiction to issue writs of *certiorari*.
2. APPEAL.—An appellant tribunal cannot hear other testimony than that introduced below.
3. ELECTIONS—BALLOTS.—Under the provisions of Rev. Stat., 169, the State board of canvassers cannot count any ballot which does not meet all the requirements of said section.

Application by L. C. Riggs for writ of *certiorari*.

*Messrs. Howell & Gruber* and *Rump*, for applicant.

*Attorney General W. A. Barber*, contra, for State board of canvassers.

*Mr. T. W. Bacot*, also contra, for contestee.

April 6, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. This is an application addressed to this Court in the exercise of its original jurisdiction, praying that a writ of *certiorari* be issued, directed to the board of State canvassers, requiring them to send to this Court all papers, proceedings, and records, connected with the election for judge of probate for Dorchester County, in order that this Court may examine the same, and see if there is any error in the action of said board in declaring one Joseph L. Stopplebein elected to said office of judge of probate for Dorchester County. In accordance with the prayer of the petition, the writ of *certiorari* was issued. The board of State canvassers made their return thereto, which was not traversed, and the case was heard upon the petition and return.

Without going into any detailed statement of the various allegations in the petition and return to the writ of *certiorari*, it will be sufficient to state only so much thereof as is necessary for a proper understanding of the questions presented in the argument, necessary to be considered in the decision of the case. It appears that, on the 22d day of May, 1897, an election was held for the election of a State senator, and for the various county officers, for the county of Dorchester, in pursuance of the provisions of an act establishing said county, approved 25th of February, 1897—22 stat., 595. At that election, it seems that the petitioner, L. C. Riggs, and the said Joseph L. Stopplebein, were opposing candidates for the office of judge of probate. On the Tuesday following said election, to wit: on the 25th of May, 1897, the board of county canvassers met and proceeded to canvass the votes cast at said election; and while engaged in performing said duty, the said Stopplebein ap-

peared and gave notice that he contested said election upon
the several grounds stated in his written protest then pre-
sented. The board of county canvassers, however, made a
statement of the votes cast at said election, showing that
the petitioner had been elected to the said office of judge of
probate, and they so declared. Thereupon the said Stop-
plebein appealed to the board of State canvassers upon the
various grounds set forth in the record. The board of State
canvassers met on the 1st of June, 1897, "for the purpose of
canvassing the returns and declaring the result of the elec-
tion held in Dorchester County on the 22d day of May,
1897." At this meeting, both parties—Riggs and Stopple-
bein—were present, represented by counsel. Upon exami-
nation of the report from the county board of canvassers, it
was found that the only statement relative to the protest
and contest of Mr. Stopplebein, was a statement signed by
P. H. Hutchinson, chairman of the board, of which the fol-
lowing is a copy: "St. George's, S. C., May 25th, 1897. To
the State Board of Canvassers, Columbia, S. C.—Gentlemen:
At the meeting of the county board of ·canvassers for Dor-
chester County, held this day, the board determined to de-
clare the result of the election upon the face of the returns
of the managers, without hearing the protest and contest of
General Stopplebein, the papers of which were regularly
served upon us. Very respectfully, P. H. Hutchinson, Chair-
man." The record of the proceedings of the board of State
canvassers, sent up with their return to the writ of *certio-
rari*, then shows the following: "After hearing counsel for
contestant and contestee as to the jurisdiction of said board
to hear and determine the contest," a resolution was adopted:
"That the papers in the Dorchester County contest case be
remanded to the county board of canvassers, with the re-
quest that they act as the law in such cases require, and hear
and act upon the said contest, and return all the papers to
the State board of canvassers on or before Tuesday, June
15th, 1897." Pursuant to adjournment, the board of State
canvassers met on the 15th of June, 1897, when the follow-

ing communication to that board was read: "We, the un-
dersigned, the county board of canvassers for Dorchester
County, responding to your resolution of June 1st, instant,
in the matter of the appeal in the contested election case of
Joseph L. Stopplebein, contestant, against L. C. Riggs, con-
testee, begs to return to you all papers therein, which you
remanded to us, and in connection therewith, we respect-
fully report: 1. That we have not again passed upon the
contest of Joseph L. Stopplebein, for the reason: 1st. That
we had done so at our previous meeting held on May 25th,
1897, at which meeting we had declared L. C. Riggs elected
to the office of judge of probate for Dorchester County. 2d.
The statutory limit of ten days having expired, we no longer
have power to act upon the contest in the case." It is also
added in this communication, by way of explanation of the
letter of Hutchinson, as chairman, above copied, that the
same was signed after the board had adjourned, and after
one of the members had left, "at the earnest solicitation of
Joseph L. Stopplebein, he stating that the same was a mere
matter of form, and could do no harm;" and that the other
member of the board, J. J. Hutto, upon being consulted,
"stated that the chairman could sign it if he liked, but that
he (Hutto) would not do so, and declined to do so." The
communication goes on to state that the said Stopplebein,
at the meeting of the board of county canvassers on 25th
of May, 1897, did not present, or offer to present, any other
proof of his allegations in support of his protest, except the
two affidavits with regard to the Ridgeville precinct, both
of which were received and sent up with the other papers
in the case. This communication was signed by Hutchin-
son, chairman, and Hutto.

From this action of the board of county canvassers, the
said Stopplebein again appealed. After some discussion
by the board as to whether any new matter should be in-
troduced, a number of affidavits were read, some of which
appeared to be in favor of contestant and some in favor of
contestee. After the matter was fully argued by counsel

for the respective parties, the board of State canvassers resolved: "1st. That all papers not sent up by the board of county canvassers be excluded from consideration. 2d. To count the ballots and throw out all that did not come up to the requirements of the law." Accordingly the ballots were thoroughly canvassed, and the result was declared, amongst other things, that Joseph L. Stopplebein had received the highest number of votes for the office of judge of probate for Dorchester County, and was, therefore, elected to said office. The board of State canvassers, in their supplemental return, state "that the grounds upon which they exclude certain ballots, in canvassing the ballots sent up to them by the board of county canvassers, were because the ballots so excluded were contrary to the requirements of section 169 of the Revised Statutes of 1893, in respect to size, and were not without ornament, designation, mutilation, symbol or mark of any kind whatsoever, except the name or names of the person or persons voted for, and the office for which such person or persons were intended to be chosen, as required by said section—all of which will sufficiently appear by reference to the original ballots heretofore returned to this Court."

This being the state of the case, the only question for this Court to determine is, whether there was any error of law in the action of the board of State canvassers, as set forth in their original and supplemental return. We need not incumber this opinion with the discussion of several questions which have been touched upon in the argument—for example, whether this Court has jurisdiction to issue the writ of *certiorari*, as prayed for in this case—for we do not understand that our jurisdiction is questioned; because, whatever doubt might have arisen under the provisions of the Constitution of 1868, which was discussed in the case of *Ex parte Childs*, 12 S. C., 111, the provisions of the present Constitution are quite sufficient to remove any such doubt.

Nor need we discuss the question (if, indeed, it could be

regarded as a question), whether an appellate tribunal can hear additional testimony to that which was presented to the tribunal from which the appeal is taken; because it distinctly appears in the return of the board of State canvassers that, though additional affidavits were read upon the hearing of the appeal, yet it likewise distinctly appears that the said board expressly resolved "that all papers not sent up by the board of county canvassers be excluded from consideration." So that the record before us fails to furnish any basis for one of the grounds of error imputed to the board of State canvassers; for instead of showing that the board of State canvassers either considered or acted upon any new or additional evidence, the record shows, on the contrary, that the said board considered and acted only upon the papers sent up to them by the board of county canvassers.

The only question, therefore, for us to determine is whether there was any error of law in the action which they took. This question is narrowed down to the inquiry, whether the board of State canvassers erred in rejecting all ballots which did not come up to the requirements of sec. 169 of the Rev. Stat. of 1893, which, having been sufficiently stated in the quotation hereinbefore made from the return, need not be repeated here. No question is made, and none could have been made, that many of the ballots sent up to the board of State canvassers by the board of county canvassers did not come up to the requirements of the section of the Rev. Stat. above referred to, as the original ballots accompanying the return of the board of State canvassers, some of which were exhibited to the Court at the hearing, very plainly showed that fact; and, therefore, the only remaining inquiry is whether there was error in rejecting and refusing to count such ballots. In view of the express provisions contained in sec. 169 of the Rev. Stat., we do not see how there can be any doubt upon this point. That section, after providing that the voting shall be by ballot, and describing what such ballot

shall be, concludes with these words: "And no ballot of any other description found in any election box shall be counted." In the face of this explicit declaration of the legislative will, we are unable to see how any officers, entrusted with the duty of canvassing the votes cast at an election, or how any court can dispense with this express requirement. The law-making power having declared that voting shall be by ballot, and having prescribed the form of such ballots, and, what is more important, having in unmistakable terms forbidden a ballot, which is not in the prescribed form, from being counted, we cannot hold that the board of State canvassers committed any error in obeying this express man-date of the body entrusted with the power to make the laws. We have neither the power nor the disposition to inquire into the wisdom or policy of such a law, for *ita lex scripta est* is sufficient for us, and concludes further inquiry. It is true, that counsel for petitioner, in his argument, has cited several cases from other States, which seem to support his contention, that such a provision of a statute is to be re-garded as directory merely, and not mandatory; but we are not informed as to the provisions of the statutes which were thus construed in those decisions, and cannot, therefore, say whether those cases would be applicable to a statute con-taining such explicit provisions as our statute does. In any event, however, those cases are not binding on us, and we are not willing to accept them as either authoritative or correct constructions of the very plain provisions of our statute.

We must, therefore, conclude that there was no error in the action of the board of State canvassers; and hence the application of the petitioner must be dismissed.