STATE *EX REL* RAWLINSON v. ANSEL, GOVERNOR.

1. CERTIORARI.—TITLE TO OFFICE and its emoluments are not involved in a proceeding by *certiorari*.
2. IBID.—JURISDICTION.—THE POWER CONFERRED ON THE GOVERNOR by sec. 556, Criminal Code, to remove the Dispensary Commissioners is executive and this Court has no jurisdiction by writ of *certiorari* to require him to certify to it the record on which his act of removal was based for review. But this Court has jurisdiction to send the writ to the Governor in a case in which he is created a judicial tribunal by the General Assembly.

MR. JUSTICE GARY *concurs, on the ground that the question is speculative, but dissents from the view that the writ may be sent to the Governor in any case.*

Petition for writ of *certiorari* in the original jurisdiction of this Court by J. M. Rawlinson, John Black, and Joseph B. Wylie against Martin F. Ansel, as Governor of the State of South Carolina.

*Messrs. W. T. Aycock, J. E. McDonald* and *W. B. Gruber,* for petitioners.

*Attorney General J. Fraser Lyon* and *Assistant Attorney General M. P. DeBruhl,* contra.

March 25, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an application in the original jurisdiction of this Court for a writ of *certiorari* to review the action taken by Governor Martin F. Ansel on February 9, 1907, in removing the petitioners, J. M. Rawlinson, John Black, and Jos. B. Wylie, from office as members of the State Dispensary Board. Immediately after the order of removal petitioners applied to the Chief Justice of this Court at Chambers, at Newberry, S. C., for *certiorari,* but on account of his illness at that time, the Chief Justice declined to consider the matter and suggested application

to one of the Associate Justices. Accordingly, the matter was brought before the writer of this opinion at his Chambers at Lancaster, S. C., on February 11, 1907.

The general power to issue writ of *certiorari* is expressly conferred upon the Supreme Court by Art. 5, Sec. 4, of the Constitution, and under section 25 of that article, each of the Justices of the Supreme Court is granted the same power at Chambers to issue such writ as when in open Court, subject, however, to an appeal to the Supreme Court. *Salinas* v. *Aultman,* 49 S. C., 385, 27 S. E., 407. When the application was made to the writer, his official duty required him to adopt one of three courses, viz., to summarily dismiss the application, to grant the writ subject to quashal for want of jurisdiction or other good reason appearing on return day, or to issue a rule or notice to show cause why the writ should not issue. The last course was adopted as the most usual course and the one best suited to meet the delicate situation presented and to correctly determine the rights of the parties with respect to the issuance of such writ, and accordingly on February 11, 1907, a rule to show cause why the writ should not issue was granted, returnable before Justice Jones at the Supreme Court room, Columbia, S. C., on February 19, 1907, and in conjunction therewith a temporary order was made preserving the *status* in the meantime.

Then, in order that the issue might be finally and speedily decided by the highest judicial tribunal, with the greatest convenience to the Governor and the least possible friction between the judicial and executive departments of the government, steps were immediately taken to have the Supreme Court convene in special session and take control of the proceedings. The rule to show cause, of course, adjudged nothing, assumed nothing, and expressed no opinion whatever, except that the issue presented could be best decided after opportunity for a full hearing on both sides. When attempt is made to subject a Governor to the jurisdiction of the Court by mandamus, injunction, prohibition, or *cer-*

*tiorari,* the almost invariable practice is to serve a rule to show cause or some alternative process which gives opportunity for a hearing before any peremptory order is made, and cases hereinafter cited show by an almost unbroken line of precedents from every State in the Union, wherein such preliminary process has been issued, that the Governor makes respectful return to such order, and either interposes the executive prerogative against the jurisdiction of the Court, or invokes the judgment of the Court on the merits.

Pursuant to the rule issued in this case, Governor Ansel made return alleging that the act in question was executive, and that the Court should proceed no further for want of jurisdiction. The Supreme Court, after considering the petition and return and argument thereon rendered judgment February 19, 1907, refusing to grant the writ and dismissing the petition, for reasons which will now be stated.

1. During the progress of the argument allusion was made to the fact that between the date of the issuance of the rule and the day of the hearing the legislature adopted an act, known as the Carey-Cothran Act, approved by the Governor on February 16, 1907, repealing the dispensary law, creating the office held by petitioners, and thereby abolishing the same, and inquiry was made as to whether the proceeding raised merely a speculative question. The Court takes judicial notice of the act abolishing the office in question. It is the usual practice of this Court not to consider questions which are merely speculative. *Cantwell* v. *Williams,* 35 S. C., 603, 14 S. E., 549. The writ of *certiorari* will not be issued unless it appears that it will be available to relieve some actual and substantial wrong or injury of the applicant. Mechem on Public Officers, Sec. 1006. Counsel for petitioners sought to meet this difficulty by moving, during the hearing, for an amendment suggesting a right to the emoluments of office and the accrual of such emoluments which would be affected by these proceedings. The Court declined to permit such amendment, holding it immaterial, as the title to office and

its emoluments were not involved in a proceeding by *certiorari*.

2. The Attorney General, representing the Governor, does not wish the case to be determined upon the foregoing ground, but requests that the Court pass upon the broader question of jurisdiction raised by the return. We will, therefore, carefully consider this grave question, because it is always and essentially the province of the Court to construe the Constitution and laws and thereby determine the limits of its own jurisdiction. In discharging this duty the Court should assert its jurisdiction when clear, without fear or favor, but it must ever keep zealous watch that no love of power or other cause shall tempt it to encroach upon or usurp a jurisdiction not its own.

The plea to the jurisdiction involves a demurrer to the case as made by the petition, and since the judgment of the Court was based upon its consideration of both petition and return, we will first address attention to the matters set forth in the petition.

Petitioners were elected by the General Assembly of South Carolina as directors of the State Dispensary in 1906 for a term of two years, unless sooner removed by the Governor, and having duly qualified immediately thereafter, were commisisoned by the Governor and entered upon the discharge of the duties of the office. Honorable Martin F. Ansel, as Governor of South Carolina, caused a rule to be served upon petitioners Rawlinson and Wylie on February 5th, and upon petitioner Black, on February 6th, 1907, requiring each of them to show cause before him at his office in the State House on February 8, 1907, why they should not be removed from office. Annexed to the rule was a notice that on the hearing before the Governor the report and findings of the joint committee appointed by the General Assembly to investigate the affairs of the State Dispensary and the testimony taken before such committee would be used, and copies of said report and testimony were served upon petitioners. Notice was also given of a con-

current resolution of the General Assembly adopting the report of the committee, finding that the directors of the State Dispensary had violated the law in the purchase of liquors and should be removed from office, and referring the whole matter to the Governor to take such action as he may deem necessary and proper. The rule to show cause also contained charges and specifications upon which it was based as follows:

"I. That you have been guilty of misconduct, neglect of duty and incapacity in that you have overstocked the State Dispensary; that $400,000 worth is sufficient upon which to run said Dispensary, and you had on hand on January 15, 1907, about $669,000 worth of stock.

"II. That you have violated the requirements of the law as set forth in section 557, Criminal Code Law, 1902, prescribing the conditions under which purchases of liquor may be made, in the following particulars:

"(a) That a purchase of about 1,600 barrels of liquor was made from Clark Bros. & Sons, of Peoria, Ill.; that this purchase was made by John Black, member of said Board of Directors, in person and without the limits of this State; that no advertising as required by Sec. 557, Criminal Code, was published, calling for bids on liquors; that no bid was forwarded by said firm to the State Treasurer stating the quality, price and chemical analysis of the liquor bought, nor was there a sample or samples of said liquors delivered to the Dispensary Commissioner; that said Board did not meet for the purpose of considering bids for said liquors, nor open bids for said liquors in public, and did not at any meeting consider the purchase thereof; that said Board did not reject any bids for said liquors nor re-advertise for other bids; that the said J. M. Rawlinson and J. B. Wylie did not object to the said purchase as aforesaid, either before or after the said purchase was made, but on the other hand, concurred in, approved and ratified above mentioned illegal purchase of liquors made in violation of Sec. 557, Criminal Code, as aforesaid.

"(b) That a purchase from Leham & Co., of Peoria, Ill., was made, of which about 300 barrels have been received by the State Dispensary; that this purchase was made by John Black, member of said Board of Directors, in person, and without the limits of this State; that no advertisement, as required by Sec. 557, Criminal Code, was published, calling for bids on liquors; that no bid was forwarded by said firm to the State Treasurer stating the quality, price and chemical analysis of the liquor bought, nor was there a sample or samples of said liquors delivered to the State Dispensary Commissioner; that the said Board did not meet for the purpose of considering bids for said liqours, nor open bids for said liquors in public, and did not at any meeting consider the purchase thereof; that said Board did not reject any bids for said liquors nor re-advertise for other bids; that the said J. M. Rawlinson and J. B. Wylie did not object to the said purchase as aforesaid, either before or after the said purchase was made, but on the other hand, concurred in, approved and ratified above mentioned illegal purchase of liquors made in violation of Sec. 557, Criminal Code, as aforesaid.

"(c) That a purchase from Moyse Bros., of Cincinnati, Ohio, of 600 cases of liquor was made by John Black, member of said Board of Directors, in person, and without the limits of the State; that no advertisement, as required by Sec. 557, Criminal Code, was published, calling for bids on liquors; that no bid was forwarded by said firm to the State Treasurer stating the quality, price and chemical analysis of the liquor bought, nor was there a sample or samples of said liquors delivered to the Dispensary Commissioners; that the said Board did not meet for the purpose of considering bids for said liquors, nor open bids for said liquors in public, and did not at any meeting consider the purchase thereof; that said Board did not reject any bids for said liquors nor re-advertise for other bids; that the said J. M. Rawlinson and J. B. Wylie did not object to the said purchase as aforesaid, either before or after the said purchase

was made, but on the other hand, concurred in, approved and ratified above mentioned illegal purchase of liquors made in violation of Sec. 557, Criminal Code, as aforesaid.

"III. That you have been guilty of misconduct and neglect of duty in that you have made the purchases from Clark Bros. & Sons, as heretofore set forth, and that you have agreed to pay $1.50 to $1.75 per gallon for said liquors, which are of a very inferior quality, being what is known as 'high wine,' and not worth more than $1.33 to $1.35 per gallon, said liquors being purchasable in the market at this latter named price.

"IV. That you have been guilty of misconduct, neglect and incapacity, in that you have purchased and shipped to county dispensers over their protests, and over the protests of the Commissioner, goods which were not ordered by said county dispensers, and which goods were unsalable and unsatisfactory to the county dispensers and to the people.

"V. That you have been guilty of neglect in that you have failed and refused to buy in sufficient quantities X Corn, X Gin, and X Rye, although there was a big demand for these goods and bids upon same were made to you by reputable concerns, offering them for sale."

Pursuant to said rule or notice the petitioners appeared by counsel and made return duly verified by each of them, in which they, reserving all legal right to object to any irregularities or want of power to remove, denied the various charges and specifications, and alleged substantial compliance by them with the law as to the purchase of said liquors, and further denied the legal sufficiency of said charges and specifications as cause for removal. In their return, petitioners protested against the use in this proceeding of the report and finding of the joint committee of the General Assembly and the testimony taken before said committee as *ex parte*, not connected with this proceeding, when no charges existed against petitioners, with no opportunity of being advised of charges against them, to be confronted by the witnesses, to cross-examine witnesses or introduce testi-

26—76

mony in reply, and that the meetings and proceedings of said joint committee were held in private, no one being allowed to be present save the members of the committee, the witnesses being examined, and the stenographer, that much of said testimony was hearsay and incompetent and from persons not sworn or examined by the committee. The said officers further claimed the right to have their accusers to assume the burden of proof, to be confronted by the witnesses, to have full and free opportunity to cross-examine them and the right to introduce testimony in reply. They alleged that they had many witnesses whose testimony was material in support of their defense, a large number of whom lived beyond the limits of the State and whose testimony could not be had unless they should be allowed a reasonable time to procure the same, which they believed could be obtained if leave and opportunity were granted, and in this connection, attention was directed to the fact that Rawlinson and Wylie were noticed only three days, and Black, only two days before the day set for hearing, and in such brief time they could not procure their witness and collect their proofs.

On the hearing before the Governor the said officers, by their counsel, contended that the rule to show cause should be dismissed by the Governor on the ground that said charges and specifications did not in law constitute sufficient ground for removal, which contention was overruled. They further objected to the introduction in evidence of the testimony taken before the joint committee and the report and findings thereon, which objection was overruled. They further claimed that they should be confronted by the witnesses with right of cross-examination, which was refused. They requested more time with which to collect their proofs and procure their witnesses, which was refused, except that the Governor adjourned the hearing until next day, February 9, 1907, at which time they were required to furnish whatever proofs they might desire to offer in the form of affidavits or other written evidence. On February 9, 1907,

the Governor, over the objection of petitioners, received and considered as evidence the testimony taken by the joint committee and the report and findings thereon, without other testimony, and thereupon ordered the removal of petitioners from office, the execution of which it is alleged would deprive petitioners of the books and records and the profits and emoluments of said office, and that petitioners are remediless without the intervention of this Court by *certiorari*. To the petition there is annexed a copy of the testimony as taken before the joint committee, including the testimony given under oath by the petitioners, Rawlinson and Wylie, examined by the joint committee, and a letter of petitioner Black, in referenec to certain purchases made by him, together with the testimony of various dispensary officials, as W. O. Tatum, State Commissioner; W. M. Floyd, travelling auditor; R. W. Nichols, inspector; L. L. Baker, shipping clerk; M. H. Mobley, clerk of State Board; Jas. H. Claffy, superintendent; William P. Norfolk, blender, together with a number of letters and exhibits.

The theory of the petition is that the power to remove in this case was not to be exercised at will or discretion, but was a power to remove for cause, that such a power is judicial, and that the officer upon whom such power is conferred is thereby made a judicial tribunal, subject to review by *certiorari* for want or excess of jurisdiction or errors of law in the exercise of such jurisdiction. Waiving for the moment the question as to whether the action of the Chief Executive can, in any oase be directly reviewed, we think the petition states no case in which the writ should issue against any officer or tribunal. It is a well established rule of law that *certiorari* will not lie to review a decision resting in the discretion of the officer or tribunal rendering it. Throop on Public Officers, Secs. 802, 810; Mechem on Public Officers, Sec. 1005; 2 Spelling on Ex. Relief; 6 Cyc., 756; 4 Ency. Pl. & Pr., 81.

Art. 3, Sec. 27, of the Constitution, provides: "Officers shall be removed for incapacity, misconduct, or neglect of

duty in such manner as may be provided by law, when no
mode of trial or removal is provided in the Constitution."
As no mode of trial or removal is provided in the Consti-
tution applicable to dispensary officers, it is clear that the
legislature, under the section above quoted, had plenary
power to provide for the removal of dispensary officers with
or without trial. Section 556, Criminal Code, provided,
that "the term of office of the members of said Board (Di-
rectors of the State Dispensary) shall be for two years,
unless sooner removed by the Governor." In the absence of
any direction as to the particular procedure by which re-
moval was to be made, the statute conferred on the Gov-
ernor the power to remove at his discretion under such pro-
cedure as he chose to adopt for his own satisfaction. It is
not contended that the Governor had no power of removal
in this case, but the objections go to the manner in which
he exercised his jurisdiction. If, however, he had discre-
tion to remove without a hearing, petitioners were not de-
nied any legal right, but received favor in so far as they
were allowed opportunity to make defense, after notice and
specification of charges. They accepted their office subject
to the power of summary removal by the Governor.

We will now consider whether this Court has jurisdiction
to issue the writ of *certiorari* to review the action of the
Governor in any case. The article of the Constitution
which invests this Court with power to issue *certiorari* con-
tains no limitation as to the persons subject to such writ,
but this grant of power must necessarily be harmonized
with Art. I, Sec. 14, of the Constitution, which provides:
"In the Government of this State, the legislature, executive
and judicial powers of the government shall be forever sepa-
rate and distinct from each other, and no person or persons
exercising the functions of one of said departments shall
assume or discharge the duties of any other," and with Art.
IV, Sec. 1, which declares: "The Supreme executive au-
thority of this State shall be vested in a Chief Magistrate,
who shall be styled 'The Governor of the State of South

Carolina.' " Under a republican government such as ours, sovereignty lies in the people. This sovereignty is delegated by the people under the Constitution to the three departments of government, executive, judicial and legislative, which are co-ordinate and independent, and it must follow that each is supreme as to matters within its own sphere of action, subject alone to the limitations, checks and balances provided in the Constitution. This general rule is easy to state, but some difficulty arises in its application. All the authorities agree that in the exercise of a discretionary official act, an executive officer cannot be restrained, coerced or controlled by the judicial department. But as applied to members of the executive department, other than the Chief Executive, jurisdiction is generally asserted by the Courts to compel the performance of an official duty imposed by law, which is plainly ministerial and involves no discretion. *Marbury* v. *Madison,* 1 Cranch, 49; *Kendall* v. *U. S.,* 12 Pet., 527; *State ex rel. Wallace* v. *Hayne,* 8 S. C., 367. This jurisdiction has been so frequently asserted in this State as against heads of the executive department, that it is not questioned. *Butler* v. *Ellerbe,* 44 S. C., 256, 22 S. E., 425; *Lord* v. *Bates,* 48 S. C., 96, 26 S. E., 213; *Buchanan* v. *State Treasurer,* 68 S. C., 411, 47 S. E., 683; *Duncan* v. *State Board of Education,* 74 S. C., 560; *Murph et al* v. *Landrum ct al., ante* 21; *British and American Mortgage Co.* v. *Jones, Comptroller, ante* 218. The Board of State Canvassers is composed of the Secretary of State, Comptroller General, Attorney General, State Treasurer, Adjutant and Inspector General, and Chairman of Committee on Privileges and Elections of the House of Representatives, who, as judicial officers, have power to decide cases on appeal from the decisions of the county board of canvassers, and their action is subject to review by this Court, as in *ex parte* Riggs, 52 S. C., 298, 29 S. E., 645. It would probably not be doubted if the Governor had been made a member of this Board that the action of the Board, even so far as influenced by his vote, would have still been

subject to review. The Governor is, by section 623, Civil
Code, made *ex officio* a member of the Sinking Fund Commission, the Board of Directors of the State Penitentiary,
the Board of Trustees of the South Carolina College, the
Board of Trustees of the State Military Academy, the
Board of Trustees of the South Carolina Industrial, and
Winthrop Normal College, the Board of Trustees of the
Colored Normal, Industrial, Agricultural and Mechanical
College of South Carolina, the State Board of Education,
and the Board of Phosphate Commissioners. The Court
would doubtless not hesitate to issue mandamus against any
of these boards to compel performance of a ministerial duty
and, if any judicial function should be conferred on such
boards, to review their action under *certiorari,* as in *ex parte*
Riggs, *supra.* Those who argue in favor of subjecting the
Governor to judicial process, when his action alone is involved, see no logical stopping place between compelling the
performance of ministerial duties and reviewing judicial
action, when all the other members of the executive department are concerned, and doing the same thing when the chief
of the executive department is concerned.

There is great and irreconcilable conflict among the authorities on the question as to whether writ of mandamus
may issue against the Governor. On one hand, in Alabama, California, Colorado, Montana, Nebraska, North
Carolina, and Ohio it has been decided that such writ will
issue against the Governor. *Tennessee and Coosa R. R.
Co.* v. *Moore,* 36 Ala., 371; *Harpending* v. *Haight,* 39
Cal., 189; 2 Am. Rep., 432; *Greenwood, etc. Co.* v. *Routt,*
17 Colo., 156; 31 Am. St. Rep., 284; *Chumasero* v. *Potts,*
2 Mont., 242; *State ex rel. Bates* v. *Thayer,* 31 Neb., 82;
*Cotton* v. *Ellis,* 7 Jones Law (N. C.), 545; *State* v. *Chase,*
5 Ohio St., 528, approved and followed in *State ex rel.
Trauger* v. *Nash* (Ohio), 64 N. E. Rep., 558.

On the other hand in Arkansas, Florida, Georgia, Illinois,
Indiana, Louisana, Maine, Maryland, Michigan, Minnesota,
Mississippi, Missouri, New York, Pennsylvania, Tennessee,

and West Virginia, jurisdiction to issue such writ against
the Governor is denied. *State ex rel. Bisbee* v. *Governor,*
17 Fla., 67; *State* v. *Towns,* 8 Ga., 360; *Hawkins* v. *Governor,* 1 Ark., 570; 33 Am. Dec., 346; *People* v. *Bissell,* 19
Ill., 229, 68 Am. Dec., 591; *Hovey* v. *State,* 127 Ind., 588,
22 Am. St. Rep., 663, 11 L. R. A., 763; *State ex rel. Oliver*
v. *Warmouth,* 22 La. Ann., 1, 2 Am. Rep., 712; Petition of
Dennett, 32 Me., 508, 54 Am. Dec., 602; *Miles* v. *Bradford*
(Md.), 85 Am. Dec., 643; *Southerland* v. *Governor,* 29
Mich., 320, 18 Am. Rep., 89; *Rice* v. *Austin,* 19 Minn., 103;
18 Am. Rep., 330; *Vicksburg etc. Co.* v. *Lowry,* 61 Miss.,
102, 48 Am. Rep., 76; *State ex rel. Robb* v. *Stone* (Mo.),
23 L. R. A., 194; *People* v. *Morton,* 156 N. Y., 136, 50 N.
E. Rep., 791, 41 L. R. A., 231; Appeal of Hartranft (Pa.),
85 Pa. St., 433, 27 Am. Rep., 667; *Bates* v. *Taylor*
(Tenn.), 3 L. R. A., 316; *Fleming* v. *Gutherie* (W. Va.),
3 L. R. A., 53.

Governors of States have been subjected to injunctive
process from the Federal Courts as in *Davis* v. *Gray,* 16
Wallace, 203, 21 L. Ed., 447; *Board, etc.,* v. *McComb,* 2
Otto, 531, 23 L. Ed., 623. These cases have not been overruled, but with reference to *Davis* v. *Gray, supra,* the Court,
in *Cunningham* v. *Macon, etc. R. R. Co.,* 3 Sup. Ct. Rep.,
298, said that, "In enjoining the Governor of the State in
the performance of one of his executive functions the case
goes to the verge of sound doctrine, if not beyond it, and
that the principle should be extended no further."

It may be said also that the Governor of the State does
not bear in all respects the same relation to the Federal
judiciary as to the State judiciary. While the United States
Supreme Court affirms jurisdiction to issue mandamus
against cabinet officers, as in *Marbury* v. *Madison, supra,*
and *Kendall* v. *U. S., supra,* and other cases that might be
cited, in *Mississippi* v. *Johnson,* 4 Wall., 475, the Court refused to grant leave to the State of Mississippi to file a bill
to enjoin President Andrew Johnson from the execution
of the reconstruction act of Congress, on the ground that the

official duty to enforce such law was in no just sense ministerial, but purely executive and political, and there could be no judicial interference with executive discretion. At the same time the Court declined to express an opinion on the broader issues discussed in argument whether in any case the President of the United States may be required by the process of that Court to perform a purely ministerial act under a positive law. So the conflict wages with reference to the power to issue mandamus against the Governor. One line of cases sustaining the power on the ground that a ministerial, mandatory duty is not strictly executive; that for every wrong there is a remedy; that in the protection of private rights no man is higher than the law; that it is the duty of the Court to declare the law and take the consequences; and that it is disrespectful to the Governor to imagine that he would resist the law which his oath binds him to enforce. The other line of cases contending that a ministerial duty may nevertheless be executive; that the Governor is a class by himself and is invested with the supreme executive authority; that an attempt to compel, restrain or control him in the exercise of his duty as executive, would not only be impotent if he resisted, but would be a usurpation by the judiciary of the jurisdiction of the Chief Executive in violation of the Constitution, and that while no man is higher than the law, no Court is higher than the Constitution, which is the supreme law. The case which most powerfully sustains the latter view is *Sutherland* v. *Governor,* 29 Mich., 320, 18 Am. Rep., 89, the opinion being written by the eminent and learned jurist and author, Judge Cooley; while the case which most vigorously sustains the former view is *Greenwood etc.* v. *Routt,* 17 Col., 156, 31 Am. St. Rep., 284. See in this connection exhaustive annotation by Mr. Freeman in the last mentioned volume at page 294 in connection with annotation to *Hawkins* v. *Governor,* 33 Am. Dec., 361. We have noticed at some length the question as to the right to issue mandamus against the Governor, not to take sides in that controversy,

as this is not a case in mandamus, but to show the conflict on that vexed question and the difficulty in the way of asserting that in no case can a Governor be subjected to judicial process.

We have no case in this State which is controlling on the question at issue. In *Evans* v. *Governor Tillman* and *Treasurer Bates,* 38 S. C., 238, 17 S. E., 49, injunction was sought to restrain defendants from entering into a contract for the sale of State bonds on the ground that the proposed contract was not authorized by the terms of the act to provide for redemption of the State debt, known as Brown Consul bonds and stocks; and in *Robertson* v. *Governor Tillman* and *Treasurer Bates,* 39 S. C., 298, 17 S. E., 678, injunction was sought to restrain defendants from issuing said bonds under said contract adjudged valid in *Evans* v. *Tillman,* upon the ground that the act authorizing the issue was unconstitutional. Injunction was denied in each case upon considering the demurrer to the petition, but there was no suggestion that the Governor was exempt from the process sought against him as Chief Executive.

The nearest approach is *Grier* v. *Governor Taylor,* 4 McCord, 206, in which the Court held that the writ of prohibition will not lie against the Governor to restrain him from granting a commission to an officer who had been improperly elected. As the writ of prohibition only goes to prevent an inferior judicial tribunal or officer from acting without or in excess of jurisdiction, it is manifest that prohibition would not lie against the Governor to prevent the performance of a nonjudicial act such as issuing a commission to an officer, a duty imposed upon the Governor by the Constitution and strictly political and executive. The principle that may be drawn from that case is that a Court will not restrain performance of an executive duty imposed upon the Governor by the Constitution.

Now, with reference to the question whether the writ of *certiorari* may issue to the Governor, there are few precedents to guide. In the case of *State ex rel. Pecks* v. *Rusk,*

*Governor,* 55 Wis., 465, the writ was allowed by one of the Justices of the Supreme Court in vacation. The Governor made due return thereto, but at the same time protested that the Court had no jurisdiction to send such writ to the Governor. The Court, notwithstanding the objection to its jurisdiction, decided the case on the merits, holding that the Governor had correctly construed the law in reference to the action sought to be reviewed and that the legislature had invested him with plenary discretion to distribute the fund in his hands and that his determination was conclusive on the Courts. This case, in its procedure and results, is strikingly like the case at bar. The Court further said, at page 479: "The question of jurisdiction has been ably argued, but we have thought best to give our opinion on the merits of the controversy, and the conclusions we have reached relieve us from the necessity of passing upon that question. We, therefore, leave it undetermined, and will only remark that this Court *has not* and will not in any case, *assume jurisdiction* to review the acts of a corordinate department of the government, *unless the duty and power to do so are clearly imposed and conferred upon it by the Constitution and laws."* The action of the Court in taking jurisdiction, notwithstanding the protest against the same, and the language we have italized, would seem to indicate the inclination of the Court to hold that such judicial function might be conferred upon a Governor as would make it the duty of a Court to review by *certiorari.*

In 2 Spelling on Extraordinary Relief, paragraph 1954, it is stated that the executive acts of the Governor of a State cannot be reviewed and set aside by *certiorari,* since to allow it would be an unwarrantable interference of the judicial with the executive department of the government, but to sustain this view cites only the case of *People* v. *Hill,* 13 N. Y. Sup., 186, 189, which merely held that the writ of *certiorari* will not be granted by a single Judge sitting at special term to review the action of the Governor as commander-in-chief in disbanding a company of militia under

the provisions of the New York Military Code. Judge Andrews, speaking for the Supreme Court, Special Term, New York county, said: "The learned and industrious counsel for the relators have not referred me to any case in which a writ of *certiorari* has been issued to the Governor of a State. Reference is made to the case of *People* v. *Mayor,* 19 Hun., 441; *People* v. *Cooper,* 21 Hun., 517; and *in re* Nichols, 6 Abb., N. C., 474. But that was a case in which it was said that the Governor acted judicially in approving the removal of a civil officer by the mayor of New York City and that the Court had jurisdiction to review the decision of the Governor by means of a writ of *certiorari,* but no writ was issued to the Governor in that case, and what was said upon the subject of the power of the Court by the Judge at special term was entirely *obiter* and cannot be regarded as a binding authority. Besides it would by no means follow that if the Court did have jurisdiction to review the decision of the Governor in that case it would have jurisdiction to review a military order made by the Governor as commander-in-chief." This last view accords with the rule in this State that a writ of *certiorari* does not lie to a military tribunal. 1 Strob. Law, 190. The Constitution makes the Governor commander-in-chief.

In the case of *People* v. *Mayor,* 19 Hun. (N. Y.), 441, referred to in *People* v. *Hill,* 13 N. Y. Supp., 186, Westbrook, J., after deliberately considering the question, expressed the opinion that the action of the Governor in approving the action of the mayor in removing an officer from office for cause, being judicial, was subject to review by *certiorari.* In that case the writ was issued to the mayor and refused as to the Governor, not because his action was beyond review, but because it was unnecessary, since if the action of the mayor was annulled the action of the Governor in approving the same would fall with it. In 14 Am. & Eng. Ency. Law, 2d Ed., 1106, the author says: "It seems doubtful whether in any case the action of the Governor can be reviewed by the Courts upon a writ of *certiorari,*"

and to sustain this statement, cites the two cases from New
York above noticed, with the remark that the views of
Judge Andrews in *People* v. *Hill, supra,* seem in accord
with *People* v. *Morton,* 156 N. Y., 136, 50 N. E. Rep., 791,
already cited in this opinion to the propostion that manda-
mus will not lie against the Governor.

The foregoing constitute all the authorities to which our
attention has been directed, and the most that can be said of
them is that they leave the question in doubt.  As we have
no controlling case in this State on the subject, we will
briefly consider the question on principle.  The writ of
*certiorari* is issued by a superior Court to an inferior judi-
cial or quasi-judicial tribunal or officer to certify the record
of trial to the superior Court for its review to ascertain
whether the inferior tribunal had jurisdiction or exceeded
its powers, or committed substantial errors of law, but not
to review the facts.  *Ex parte* Riggs, *supra.*  It is sug-
gested that a Governor can never be an inferior tribunal,
since he is the Supreme Executive Officer.  This reason
would be impregnable if the Constitution, which vested the
Supreme and Circuit Courts with the judicial power, had at
the same time created the Governor a judicial tribunal or
made it his executive function to remove officers for cause
after notice and opportunity for hearing.  Then it could
be said the power of removal, whether judicial or executive,
was a co-ordinate power beyond control of the regular
Courts, just as the high Court of impeachment would be.  In
this case, however, the Governor does not derive his power
to remove directly from the Constitution, but by creation of
an act of the legislature.  Therefore, if the power to re-
move officers is judicial, the tribunal designated to exercise
the power is judicial, and must of necessity be an inferior
jurisdiction in a legal sense, because the legislature is wholly
without power to create a judicial tribunal which is not in-
ferior to the judicial power vested in the Supreme and Cir-
cuit Courts.  The fact that the power was conferred on the
Governor may have force in determining whether the inten-

tion was to create the Governor into a judicial tribunal, but if admitted that the Governor has been created such judicial tribunal by act of the legislature, it follows inevitably that with respect to such function he would be subject to review by the superior tribunal. Several reasons are suggested against this view. One is that in case of resistance by the Governor the Court would have no power to enforce its mandate. That is a political reason, not a legal reason. The adequacy of the Court's power to enforce its judgments can never be a true test of jurisdiction. The duty of the Court is to declare the law, and it must always rely upon the Executive department to execute the law declared. In any defiant controversy between the judiciary and either of the other co-ordinate departments, the judiciary would prove weakest. It carries neither purse nor sword. The strength of its mandates must lie in their righteousness, in the confidence the people may have in the knowledge and integrity of the Court, in the necessity to civil liberty, that there be a final arbiter as to what is law, in the duty of the executive to enforce that law, and in this last reliance it is not conceivable that there will be any disappointment.

It is further said that a writ which runs in the name of the State cannot go against the Supreme Executive of the State, that sovereignty cannot be opposed to sovereignty. This thought is founded in an incorrect conception of our republican form of government. We have not three sovereignties in our State government, the Legislative, the Executive, and the Judicial. There is but one sovereignty, the people, speaking through the Constitution. The three departments are but arms of the sovereign. When the question or duty is legislative, all sovereignty sustains the Legislative arm; when the question or duty is executive, all sovereignty upholds the Executive arm; when the question or duty is judicial, all sovereignty supports the Judicial arm. The famous expression by Chief Justice Marshall in *Marbury* v. *Madison, dictum* though it be applied to mandamus to the chief executive, may be applied even more forcibly to *certiorari:*

"It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

For the purpose of this question it may be conceded that the weight of authority and reason are in favor of the view that mandamus should not lie to the Governor to compel performance of an executive duty, whether ministerial or not, since there may be no good ground for a distinction between an executive duty which is ministerial and an executive duty which is not ministerial. But mandamus and *certiorari* rest on distinct and opposite principles, the former compels an unperformed ministerial duty; the latter reviews a performed judicial duty, while neither operates to control discretion, the former never goes to control judgment, while the latter never goes except to review and control judicial judgment. In the nature of things there must be a vital distinction between an executive duty and a judicial duty. The very section of the Contstitution involved in this inquiry shows that such functions are separate and distinct. Hence, we think that Courts which hold that mandamus will not lie to the Governor may consistently hold that *certiorari* will lie, if the Governor is invested by the Legislature with some judicial function. Here lies the point in the contention of petitioners, but here also is the strength of the plea to the jurisdiction. The Legislature has not invested the Governor with any judicial function in the matter of removing the dispensary officers. "The mere fact that an officer exercises judgment in deciding the matter before him does not make his decision of a judicial character so that it may be reviewel by *certiorari.*" Throop on Pub. Off., sec. 802, and cases cited. The power of removal was vested in the Governor as Governor, and is essentially a political, governmental, executive duty, and, therefore, beyond the control of the Judiciary. In the case of *in re Suden,* 64 N. E. Rep., 451, the New York Court of Appeals held that "Constitution, Art. 10, sec. 1, vesting power in the

Governor to remove officers designated therein, on charges and after hearing, is executive and not judicial, and the exercise of that power is not reviewable by the Courts." For stronger reason the power of removal in this case is executive, as there is no requirement that the removal shall be for cause on charges after hearing.

The judgment of the Court refusing the writ and dismissing the petition has heretofore been pronounced.

MR. JUSTICE GARY *concurs on the grounds, 1st, that the proceedings present merely a speculative question; 2d, that the Governor, in this case, is not subject to the writ of certiorari, but he does not assent to the doctrine that he is subject to such writ in any case.*