WRIGHT v. STATE BOARD OF CANVASSERS.

1. ELECTIONS—VOTERS—REGISTRATION.—As a prerequisite to the right to vote each elector must present to the managers a registration certificate for the precinct at which he offers to vote and proof of payment of all taxes for the previous year. Taking an oath that he is a qualified elector is not sufficient.
  MR. JUSTICE WOODS *thinks the failure of managers to require presentation of registration certificates should not invalidate the election.*
2. APPEAL—CERTIORARI.—Point not raised before Circuit Judge in *certiorari* cannot be raised for first time in this Court on appeal.

Before HYDRICK, J., Richland, June, 1906. Affirmed.

Action for *writ of certiorari* by Henry Wright against State Board of Canvassers. From Circuit order setting

aside decision of State Board of Canvassers, defendants appeal on following exceptions:

"I. Because it is respectfully submitted that Judge Hydrick erred in finding that the State Board of Canvassers found as a fact that the grounds of the contest were all true, whereas, as shown by the record, said board only found as follows:

"First: That the return of the managers at Laurens box was not signed.

"Second: That at least six, and not more than twenty-one registered electors voted at wrong precincts—Laurens and Clinton.

"Third: That the production of a registration certificate and proof of the payment of taxes for the present year, by the electors at the Laurens and Clinton boxes, was not required.

"II. Because he erred in holding that the production of a certificate of registration and proof of the payment of taxes, by the production of a tax receipt, were conditions precedent to the casting of a legal ballot.

"III. Because he should have held that, under the Constitution of this State, the only prerequisites to the casting of a legal ballot are: (1) The registration of the voter; (2) Proof of the payment of taxes for the preceding year —such as shall satisfy the managers, and not, necessarily, the production of a tax receipt.

"IV. Because he should have held that if there is any statute in this State providing that the actual production of a registration certificate, and the production of a tax receipt, are prerequisites to casting a legal ballot, that such statute is in derogation of the Constitution, and is, therefore, null and void.

"V. Because he erred in not holding that section 213 of the Code of 1902, ought to be construed in connection with section 193 of the Code, and with the provisions of the Constitution relating thereto, and that when so construed

they do not require the actual production of a registration certificate, nor the production of a tax receipt.

"VI. Because he erred in holding that the various' sections of the Constitution and the statutes passed in pursuance thereof require the actual production of a certificate or registration and a tax receipt as conditions precedent to voting.

"VII. Because he erred in holding that the State Board of Canvassers erred in holding that the votes cast at Laurens and Clinton precincts should be counted, and in reversing the decision of the county board, whereas he should have sustained the action of the State board.

"VIII. Because he erred in passing at all upon the findings of the county board, as to matters upon which there was no testimony whatever, such as that persons were allowed to vote at boxes other than Laurens and Clinton, without registration certificates, etc., the petition not alleging irregularities at other boxes, and there being no proof of the same—it being respectfully submitted that the Circuit Judge was without jurisdiction to pass upon such questions.

"IX. Because he erred in not sustaining the decision of the State board when it did not appear that the irregularities complained of were sufficient to change the result of the election—there being no fraud charged or proved.

"X. Because he erred in not sustaining the action of the State board when it appeared that a fair and honest election had been held in Laurens County, in which a majority of the qualified voters had voted in favor of 'No Dispensary'—and in not holding that the matters alleged in the petition, and such as were proved, were, at most, only irregularities, which could not affect the result of the election, and thus alter the will of the people as expressed at the ballot box.

"XI. Because he erred in not sustaining the action of the State board, and thus sustaining the election, when there was absolutely no proof that the irregularities complained of changed the result of the election.

"XII. Because he erred in not holding that he only had jurisdiction (in this proceeding) to pass upon such errors of law as were committed by the State board, and in not holding that under the findings of fact of the State board, the defects complained of and proved were only irregularities which could not affect the result of the election.

"XIII. Because he erred in not sustaining the action of the State board, and in reversing the same, when it is respectfully submitted that under the findings of fact of the State board there was no proof whatever, such as would vitiate the election,—it being respectfully submitted that the Circuit Judge was without jurisdiction to reverse any findings of fact of the State board, and that the State board found no facts which would change, or tend to change, the result of the said election.

"XIV. Because he erred in not holding that the plaintiff herein, Henry Wright, was without authority of law to maintain this action—he being merely a private citizen and utterly without any pecuniary interest in said controversy—when he should have held that the action ought to have been brought in the name of the State, and he was without jurisdiction to consider the action when brought by the plaintiff herein."

*Attorney-General Leroy F. Youmans, Ferguson & Featherstone* and *W. R. Richey,* for appellant.

*Messrs. Ferguson & Featherstone* and *W. R. Richey* cite: *Presentation of registration certificate is not requisite to right to vote:* Art. II, secs. 4, 8, 9, 12, Con. 1895; Code, 1902, 213. *Provisions in election laws are directory:* End. on Int. of Stat., sec. 438; McCreery on Elect., secs. 187 to 190; 10 Ency., 690, 618, 766; 15 Cyc., 308, 372, 398, 416, 419. *After illegal votes are taken off the result should stand:* Chev. L., 269; 20 S. C., 354. *No constitutional qualification of an elector can be abridged by statute:* 49 Wis., 555; 59 Penn. St., 111; 23 Am. Dec., 632; 43 Ohio

St., 548; 53 Mich., 72; 38 Wis., 87; 24 A. R., 273; 17 Nev., 309; 51 Miss., 305; 62 N. Y., 186; 10 L. R. A., 231; 16 L. R. A., 760; 75 Tex., 420; 38 Minn., 222; 34 Ind., 425; 82 Pa., 297; 58 Cal., 209; 9 S. E. R., 545; 29 Ill., 72; Mc-Creery on Elect., secs. 91, 98; Cool. Con. Lim., 776, 778; 97 Am. Dec., 248. *Plaintiff has no right to maintain this action:* 4 Ency. P. & P., 162, 168. *And is estopped from doing so by participating in the election:* 57 S. C., 105, 125.

*Messrs. Jno. M. Cannon* and *Bellinger* and *Welch,* contra. *Mr. Cannon* cites: *Special elections are to be conducted as general elections:* Code, 1902, secs. 205, 213. *Qualifications for suffrage:* Art. 4, sec. 4, of Con.; Code, 1902, sec. 213; 10 Ency., 573-4; 25 Cyc., 287; 52 S. C., 298. *Registration does not abridge right to vote:* 7 L. R. A., 99; 22 Neb., 265; 43 Ohio St., 548; 116 Ill., 587; 47 Ill., 101; 38 Wis., 71; 28 Ia., 267; 15 Ia., 304.

*Messrs. Bellinger* and *Welch,* cite: *Objection to right to sue is waived unless taken by demurrer:* 12 S. C., 130; 47 S. C., 66. *Votes not conforming to statutory provisions is illegal:* 52 S. C., 298. *Neither the county nor State board had authority to canvass the votes:* 54 S. C., 556.

April 22, 1907. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff on the 6th day of March, 1906, exhibited his complaint wherein he alleged that he was a resident and taxpayer and was the owner of both real and personal property in Laurens County of the State of South Carolina, subject to taxation therein, and was the head of a family, having children of school age who are duly attending the public schools of said county.

The General Assembly of the State in 1892, duly passed what was known as the dispensary act of 1892.

That thereafter the General Assembly of the State, in the year 1896, passed an act amendatory to said dispensary

act which was amended in the year 1904, commonly known as the Brice bill. That in pursuance of the acts of the General Assembly two dispensaries were established in the County of Laurens, and the profits accruing to the town and County of Laurens, amounting to $77.450.07, which had been applied to assist in defraying the general county expenses thereby materially lessened and reduced the taxes, which otherwise the petitioner would have been compelled to pay.

That on January, 1906, in accordance with said acts an election was held to determine whether the taxpayers of Laurens County preferred not to have dispensaries in said county.

That the election was held by the managers duly appointed by law, but at said election at the two precincts known as Laurens No. 1, and Clinton No. 1, and Princeton precinct the managers at said election allowed persons to vote without requiring said voters to produce and exhibit their registration certificates and proof of payment of taxes for the year 1905.

That thereby the result of the election was so changed instead of there being a majority in favor of the retention of said dispensaries in Laurens County, there was an apparent majority of 46 in favor of no dispensaries in said County of Laurens.

That the votes cast at said election came before the county board of canvassers of Laurens County to be canvassed, who after due consideration held and so returned that said election in the various boxes was conducted so irregularly, such as voting outside of the right precincts, not demanding registration tickets, neglecting to take necessary oaths, etc., that the most just and fairest manner of dispensing with the matter is to declare that there was no legal election held in Laurens County.

Thereupon the contest was carried up to the State Board of Canvassers, who decided to reverse the action of the county board of canvassers for Laurens County, though they

found that the production of registration certificates and proof of payment of taxes for the previous year at the Laurens and Clinton boxes were not required.

That, therefore, on the complaint of the petitioner a *writ of certiorari* was issued by Judge Hydrick, who pronounced the following decree by which he upset the action of the State board and sustained the action of the county board of canvassers.

"Under the provisions of the dispensary law, an election was held in Laurens County, January 9, 1906, on the question of dispensary or no dispensary. The State commissioners of election organized as the board of county canvassers and canvassed the votes. The plaintiff contested the election on the ground of alleged irregularities and illegalities at the Laurens, Clinton and Princeton precincts, to wit:

"1. That persons were allowed to vote at Laurens precinct who were not registered for that precinct.

"2. That persons were allowed to vote at Laurens and Clinton precincts without being required to produce their registration certificates and proof of the payment of taxes for the previous year.

"3. That there was no registration of the voters for Princeton precinct.

"4. That the ballots voted by the opponents of the dispensary had printed thereon only the words, 'No Dispensary,' whereas, he contends they should have had thereon the words, 'Dispensary or No Dispensary.'

"The contestants contended that these polls should be rejected and the result declared according to the vote of the remaining precincts.

"After taking testimony, the board declared that the majority of the total vote of the county, including the precincts above named, was in favor of 'No Dispensary'; but, on account of irregularities and illegalities which they found to have been practiced at those precincts, and at others not mentioned, they declared the whole election void.

"An appeal from this decision was taken to the Board of State Canvassers both by the contestant, favoring the dispensary, and by certain other citizens, opposing the dispensary.

"On hearing the appeal, the Board of State Canvassers found as a fact that the grounds of the contest were all true; but, finding that there had been no fraud in the election, they reversed the decision of the county board, and declared the result in favor of 'no dispensary' by a majority of forty-six votes.

"*A writ of certiorari* to review the action of the State board was issued by me March 6th, 1906, and the return was heard April 26th, 1906.

"The contestant contends that there was no provision of law, extending the general election laws of the State to the holding of a special election; and, therefore, that the board of county canvassers had no jurisdiction, either to canvass the votes or to hear the contest, and that the Board of State Canvassers was also without jurisdiction to entertain the appeal.

" In the case of *State ex rel. Martin & Moore,* 54 S. C., 560, in which the special election on the creation of Greenwood County was under consideration, the Court, referring to sections 174 and 175 of the revised statutes of 1893, said: 'It is true that these statutory provisions originally applied only to the election of certain officers specified in section 174,' but held that the act of 1896, 22 Stat., 55, made the general election laws applicable to special elections, and sustained the jurisdiction of the board of canvassers. The act of 1896 was not codified in the Code of 1902, which is declared by the act by which it was adopted, 'to be the only general statutory law of the State on the 14th day of January, 1902.' The act of 1896 was a general law, and is, therefore, no longer of force.

"I think, however, that section 205 of the Code of 1902 does extend the general election laws to special elections,

and gives the board of county and State canvassers jurisdiction thereof.

"That section, being the first in chapter X, entitled, 'The manner of conducting elections and returning votes,' after fixing the time for holding the general election, continues: 'and all general or special elections, held pursuant to the Constitution of the State, shall be regulated and conducted according to rules, principles and provisions herein prescribed.' The following sections of that chapter provide for 'the manner of conducting elections and returning votes' in both general and special elections, and sections 216 and 217 provide for the organization of the board of county canvassers, and define the duties and jurisdiction of that board. Amongst other things, it is 'made their duty, as judicial officers, to decide all cases under protest or contest that may arise, subject to appeal to the Board of State Canvassers.' Section 223 to 228 provide for the organization and prescribe the duties and define the jurisdiction of the Board of State Canvassers, who, 'shall have power, and it is made their duty, as judicial officers, to decide all cases under protest or contest that may come before them on appeal from the decisions of the county board of canvassers.' That this chapter was intended to apply to elections other than those for the officers specified in sections 216 and 217 (formerly sections 174 and 175 of the Revised Statutes of 1893) is apparent from the language contained in the last part of section 211, to wit: 'Whenever a vote is to be taken on any special question or questions, a box shall be provided, properly labeled for that purpose, and the ballots therefor on such question or questions shall be deposited therein.' The language above quoted form section 205 of the Code of 1902 was contained in section 162 of the Revised Statutes of 1893. Then why, it is asked, did the Court hold in *State* v. *Moore, supra,* that the provisions of sections 174 and 175, of the same volume, 'originally applied only to the election of certain officers, specified in section 174?' and why did not the Court rely upon that provision

to make the election laws applicable to the special election then under consideration? Because at that time (1898) the provisions contained in section 162 of the Revised Statutes of 1893, was not law. By examination of the marginal references to the section in the Revised Statutes of 1893. it will be seen that the provision in question was taken from the act of 1872, 15 Stat., 170, which had been superseded and repealed by subsequent acts, in which the whole subject of elections was regulated.

"The Revised Statutes of 1893 were never adopted by the legislature as an act, and, therefore, had no authority, except in so far as they contained in codified form, the existing statutes of the State. But the Code of 1902 was adopted and passed as an act, and, therefore, the provision under consideration is now a part of the law of the State.

"The other questions made and argued at the hearing were:

"1. Is the production of a certificate of registration and proof of the payment of taxes a condition precedent to the casting of a legal ballot? 2. Was the failure of the managers of the Laurens precinct to sign a certificate of the result a fatal defect?

"There can be no doubt that the vote of one who is not a qualified elector is an illegal vote. The Constitution (Art. 2., sec. 4) prescribes 'the qualifications for suffrage.' Subsections a, b, c, and d, prescribe the length of residence in the State, county and polling precinct, respectively, registration, the educational qualifications to be required of those who were registered prior to 1st January, 1898, and the educational or property qualification to be required of those who apply for registration subsequent to that date. The remaining subsections, which are put down in the Constitution as qualifications for suffrage are as follows:

"(e) Managers of election shall require of every elector offering to vote, before allowing him to vote, proof of the payment of all taxes including poll tax, assessed against him and collectible during the previous year. The produc-

tion of a certificate or of a receipt of the officer authorized to collect such taxes shall be conclusive proof of the payment thereof.

"(f) The General Assembly shall provide for issuing to each duly registered elector a certificate of registration, and shall provide for the renewal of such certificate when lost, mutilated or destroyed, if the applicant is still a qualified elector under the provisions or if he has been registered as provided in subsection (c).

"It seems to me to be clear that proof of the payment of all taxes, and the possession of a registration certificate are, by the express terms of the Constitution, made qualifications for suffrage, just as much so as the required age, or length of residence in the State, county and polling precinct, or registration. The language used in subsection (e) is, according to the rules of construction, imperative. Moreover, by the terms of the Constitution itself (art. 1, sec. 29) its provisions are to 'be taken, deemed and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory, or permissory by its own terms.' Section 213 of the Code of 1902, enacted in pursuance of the Constitution, is as follows: 'The managers of election shall require of any elector offering to vote at any election, before allowing him to vote, in addition to the production of a registration certificate, proof of the payment of all taxes, etc.,'—the remainder of the section being in the exact language of subsection (e) of the Constitution above quoted.

"I hold that these provisions of the Constitution and statutes are mandatory, and that any vote cast without compliance with them is an illegal vote.

"The defendants contend that the Constitution having defined the qualifications for suffrage, the legislature had no authority to add anything to them by way of further qualification; and that the insertion of the words 'in addition to the production of a registration certificate,' in the language of subsection (e) of the Constitution, as found in section

213 of the Code of 1902, is such an additional qualification, and is, therefore, unconstitutional and void. It is true that the legislature can neither extend nor restrict the qualifications prescribed by the Constitution. But I do not think that the insertion of these words amounts to any extension of the constitutional qualifications. It is merely a regulation of the right of suffrage, by requiring proof of the constitutional qualifications, as a prequisite to voting, and a safe guard against illegal voting, which the legislature had the right to enact. 10 A. & E. Enc. (2 ed.), 573-4; 15 Cyc., 287.

"It was further contended by the defendants that, each voter having been required to take the oath, prescribed by the statute, that he was qualified to vote, according to the Constitution, was a sufficient compliance with the law; and that the finding of the county and State boards, that 'proof of the payment of taxes was not required' by the managers of the election was error of law, because there was no testimony to sustain such finding, and because it affirmatively appeared that the statutory oath was administered to each voter.

"At first, I was inclined to accept this view; but, on reflection, I do not think it is sound. Otherwise, why would the same statute, which requires the administration of the oath, also require the production of a registration certificate and proof of the payment of taxes? By parity of reasoning, a person not registered could claim the right to vote, provided he would take the oath that he was qualified. But as we have seen, the possession of a registration certificate is one of the qualifications for suffrage just as much so as registration, and it follows that a voter could not truthfully take the oath, if he did not have a registration certificate. The question may be asked: Then, why administer the oath at all as to qualification? Because since his registration, he may have become disqualified by removal, or conviction of crime, or other cause.

"If the various sections of the Constitution and the sta-
tutes passed in pursuance thereof, relative to registration
certificates are read and considered together, the conclusion
is inevitable that it was the intention of the law-makers that
the possession of a registration certificate should be held to
be a qualification for suffrage, and that its production at the
polls should be a condition prerequisite to the exercise of the
franchise. Compare the suffrage article of the Constitution
with sections 175, 178, 185, 186, 187, 191, 193, 197 and 213
of the Code of 1902.

"As to the failure of the managers of Laurens precinct
to sign a statement of the result: The authorities seem to
hold that a formal certificate signed by the managers is
essential to the validity of the return. 10 A. & E., Ency. L.
(2d ed.) 739 ; 15 Cyc., 376 ; Paine on Elections, sec. 614. But
as the powers and duties of boards of canvassers, under
the statutes of most of the States, are purely ministerial and
limited to canvassing 'the returns,' I am not prepared to say
that, under the statute of this State, which invests the boards
with powers and duties, 'as judicial officers' to canvass 'the
votes,' it is absolutely essential to the validity of the return
that it should be signed by the managers, although it is re-
quired by the statute (Sec. 215) and ought, of course, to be
done. Elections are usually conducted by persons not learned
in the law or in the construction of the statutes, therefore,
mere irregularities and errors of omission or commission
on the part of managers, which do not appear to have af-
fected the result, are, in the absence of fraud, usually held
not to vitiate the election. This principle should not, how--
ever, be carried too far; for while it is correct, and, when
applied within proper limits, serves to prevent the sacrifice
of substance to form, yet too many and too great irregulari-
ties may not only be conducive of fraud in elections, but
serve effectually to conceal it. The State should take care
to preserve the purity of the ballot box. The board of
county canvassers had before them the poll lists, the ballots,
and the tally sheets. They are authorized to canvass 'the

votes.' There being no charge of fraud, and it not appearing that this irregularity affected the result, or made it doubtful or difficult to determine, I do not think the poll should be rejected on that account, especially as it was solely an omission on the part of the managers, for which the voters are in no way responsible. 10 A. & E. Ency. L. (2d ed.) 737. The Court would be reluctant to deprive legal voters of their votes on account of an omission of duty on the part of managers, which the voters themselves are not in anyway responsible for, or which they could not have prevented.

"The same reasons, however, do not apply with equal force to the failure of managers to require the voters to produce their registration certificates and proof of the payment of taxes, because in those matters, the voters are equally at fault with the managers. They know the law, and know that they cannot legally vote, without complying with these positive requirements of the statute. Therefore, they should go to the polls prepared to meet them. If they do not, and lose their votes, it is their own fault.

"It follows that the Board of State Canvassers erred in holding that the votes cast at Laurens and Clinton precincts should be counted, and in reversing the decision of the county board.

"I do not know that, under a *writ of certiorari* to the State board, I have the right to review the action of the county board,—especially as I have not before me the records upon which they based their findings and conclusions. Certainly, I have no right to review their findings of fact. *The State ex rel. Sawyer* v. *Fort,* 24 S. C., 510.

"They found, as matters of fact, and certified the same to the State board, as follows: 'After careful investigation and tabulating of the returns, we find so many irregularities in the various boxes, such as voting outside of the right precincts, not demanding registration certificates, neglecting to take necessary oaths, etc., that the county board of canvassers for Laurens County are of the opinion that the most just and fairest manner of disposing of the matter is to de-

clare that there has been no legal election,' and they declared accordingly. They also certified as follows: 'All of the allegations contained in the appended petition have been found to be correct, besides numerous other irregularities in other boxes not enumerated in the petition of the contestants.'

"Even if I had the right to review their action in this proceeding, it does not appear to what extent there was 'voting outside of the right precincts, not demanding registration tickets,' etc.; nor does the nature or extent of the 'numerous other irregularities in other boxes not enumerated in the petition' appear.

"The great object of elections is to obtain the will of the people, and when that is expressed in a free and fair election, the Court will not defeat it on account of irregularities, or even illegalities, which do not appear to have affected the result. But when they are of such character and extent as to leave it doubtful whether the result has not been affected, and especially when it appears that illegal votes have been cast, sufficient in number to affect the result, and the polls cannot be purged of them, it would be a travesty on popular government to sustain the election.

"According to the certificate of the county board, persons were allowed to vote at precincts for which they were not registered, and were not required to produce their registration certificates, at other precincts besides those enumerated in the petition. The record before me does not show at what precincts, or how many, or on which side of the question, such illegal ballots were cast. Therefore, in view of the facts found and certified by them, I could not say that the county board committed error of law in declaring the election void.

"It is, therefore, ordered, adjudged and decreed that the decision or judgment of the board of canvassers be and the same is hereby reversed."

From this decree both sides appealed. We will now briefly notice these grounds.

"1 Because it is respectfully submitted that Judge Hydrick erred in finding that the State Board of Canvassers found as a fact that the grounds of the contest were all true, whereas, as shown by the record, said board only found as follows:

"First: That the return of the managers at Laurens box was not signed.

"Second: That at least six, and not more than twenty-one registered electors voted at wrong precincts—Laurens and Clinton.

"Third: That the production of a registration certificate and proof of the payment of taxes for the present year, by the electors at the Laurens and Clinton boxes, was not required."

So far as the first and second subdivisions of this ground are concerned we may say that the view we take of the third of such subdivisions renders them useless, for if it is true that the production of a registration certificate and proof of the payment of taxes for the previous year (1905) by the electors at the Laurens and Clinton boxes was not required at such election and that such failure rendered the election void, we need go no further. But is such the fact? The requirements of the Constitution and the statute of the State on the matter of certificate of registration are as follows. In construing the Constitution, it must be remembered that section 29 of article I requires as follows: "The provisions of this Constitution shall be taken, deemed and construed to be mandatory and prohibitory; and not merely directory, except where expressly made directory or permissory by its own terms." Section 3 of article II reads as follows: "Every male citizen of this State twenty-one years of age and upwards not laboring under the disabilities named in this Constitution and possessing the qualifications required by it, shall be an elector."

Qualifications for suffrage are set forth in section 4 of article II in subdivision (a), (b), (c), (d), (e) and (f).

(a) Relates to residence.

(b) Provides for enrollment once in ten years.

(c) Provides for enrollment and registration up to 1st January, 1898, and how obtained after that date, and provides: "And such person shall be during life a qualified elector unless disqualified by the other provisions of this article."

(d) Provides manner of application for registration after January 1st, 1898.

(e) Managers of elections shall require of every elector offering to vote at any election, before allowing him to vote, proof of the payment of all taxes, including poll tax, assessed against him and collected during the previous year. The production of a certificate or of a receipt of the officer authorized to collect such taxes shall be conclusive proof of the payment thereof.

(f) The General Assembly shall provide for issuing to each duly registered elector a certificate of registration, and shall provide for the renewal of such certificate when lost, mutilated or destroyed, if the applicant is still a qualified elector under the provisions of this Constitution, or if he has been registered as provided in subdivision (c).

Section 9 of Article II. "The legislature shall provide for the establishment of polling precincts in the several counties in the State  *  *  each elector shall be required to vote at his own precinct, but provisions shall be made for his transfer to another upon his change of residence."

Section 8 of Article II. "The General Assembly shall provide by law for the registration of all qualified electors and shall prescribe the manner of holding elections and of ascertaining the results of the same  *  *  *  ."

It is well to remember the time of any particular legislation so far as its contemporaneousness with the adoption of the Constitution is concerned, and especially when it is intended to carry into effect the direction of the Constitution for certain legislative work, while the proximity in point of time cannot control the interpretation to be placed on a provision of the Constitution, still it tends to throw light upon

such provision. This is no new doctrine. It is the fact that the statute enacted in 1896, a few months after the Constitution went into effect, directed that the managers of elections should require the production, by each voter, of his registration certificate and also in the language of the Constitution should at the same time produce proof of the payment of all taxes payable during the year preceding the election. Section 9 of act, 1896, 22d vol. of statutes, 32. These two provisions are embodied in section 263 of Code of Laws of this State at page 100.

It will necessarily occur to every mind that there is no expression in the Constitution in the sections previously quoted denying the right of the legislature to include in the act referred to, the duty of each elector when he offers to vote to produce his registration certificate to the manager of the election. The Constitution requires that not only shall there be provided a registration of voters, but also that there shall be a certificate of registration provided for each elector, and that in the case of loss or mutilation of same it shall be the duty of the registration officers to provide a certificate to supply the place of the lost, mislaid or mutilated certificate. By the very expressions in the Constitution guarding this certificate of registration, it is obvious that great importance is attached thereto by the Constitution-builders. What conclusion is more natural than that when the Constitution speaks so plainly of and provides such safeguards to preserve the existence of such certificate and at the same time directs the legislature to prescribe the manner of holding elections, that it was intended that such certificate of registration should protect the voter at the polls, and that its production at that time and place should be required to protect the public. Suppose the books of registration should be destroyed or mutilated, what greater protection to the individual voter, or to the people at large than the duty of each voter to produce his certificate of registration when he offers to vote. Suppose a change of residence of the voter takes place after registration is made, the Constitution requires a

transfer to such precinct in the registration certificate in the hands of the voter.

We see no fault in the conclusion of the Circuit Judge holding it mandatory that each voter should, as a prerequisite to voting, produce his registration certificate. Nor is there any fault in the view of the Circuit Judge in holding that it was mandatory that every voter should as a prerequisite to voting offer proof of his having paid his taxes during the previous year. This was not done in this case at the precincts at Laurens and Clinton. No certificate or receipt of the officer authorized to collect such taxes was produced. The only matter referred to is the oath of the voter that he was qualified to vote. This will not answer the demands of the Constitution and statute. And inasmuch as there were classed as legal voters hundreds who did not produce certificates of registration and proof of payment of taxes of previous year, the election is void.

These conclusions make it unnecessary that we pass upon in a separate manner, exceptions 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13, though they will be reported.

"14. Because his Honor erred in not holding that the plaintiff herein, Henry Wright, was without authority of law to maintain this action—he being merely a private citizen and utterly without any pecuniary interest in said controversy—when he should have held that the action ought to have been brought in the name of the State, and he was without jurisdiction to consider the action when brought by the plaintiff herein." No such point was raised before or decided by Judge Hydrick. It cannot be raised in this Court for the first time.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS. *Concurring in the result.* The requirement by the managers of the production of proof of payment of taxes for the previous year is prescribed by the Constitution as a qualification for suffrage in mandatory

terms.  The failure on the part of the managers to exact such proof at Laurens and Clinton precincts was, therefore, sufficient to annul the election.

I do not concur, however, in holding the presentation of registration certificates by voters at the polls necessary to the validity of an election.  Registration is one of the constitutional qualifications for suffrage, but the certificate which the Constitution requires shall be issued to the voter is not a part of the registration, but the evidence furnished the voter of his registration, and the production of such a certificate at the polls is not required by the Constitution as a condition precedent to the casting of the ballot.  The General Assembly, however, did not violate the Constitution in providing by statute that the managers should require the voter to produce his registration certificate at the polls, if that requirement is regarded, as I think it should be, only to furnish a convenient method of identification and to expedite the inquiry as to the fact of registration.  But obviously no statutory enactment can add to the constitutional qualifications for suffrage.  If, therefore, those who voted at an election were in fact registered, and otherwise qualified under the Constitution, the failure on the part of the managers to observe the statutory injunction of requiring voters to produce their registration certificates is a mere irregularity, and should not be allowed to annul the election or deprive qualified electors of their suffrage.