7643

STATE *EX REL.* DAVIS v. STATE BOARD OF CANVASSERS.

1. CERTIORARI—ISSUES.—While the Court will not review findings of fact below on writ of *certiorari,* they may be corrected as errors of law where they are contrary to any reasonable conclusion or inference from the evidence or are not supported at all by the evidence.

2. ELECTIONS—REGISTRATION—TAXES.—The requirements of the Constitution and laws of the State that the production of a registration certificate and proof of payment of taxes at the polls are prerequisites of the right to vote is not met by an agreement among the managers not to require them, nor by the personal knowledge of the managers that the voters are registered and have paid their taxes, nor by proof that the sheriff had not been in the neighborhood to levy and collect taxes.

3. IBID.—The poll should be purged of illegal votes where this can be done, but if it appears enough illegal votes have been cast to affect the result or to leave it in doubt, the whole precinct should be thrown out. Where it appears a free and fair expression of the popular will has not been obtained the whole election should be set aside.

4. IBID.—COUNTY BOARD OF CANVASSERS.—Where the State board of canvassers sends back to the county board the returns of an election with

instructions to recanvass the whole vote, upon the second hearing it is proper for the county board to hear the contest of parties who did not appeal from its former decision.

5. IBID.—PLEADINGS.—ON WRIT OF CERTIORARI to the State board of canvassers, the Court will not consider other grounds of contest than those filed with the county board unless the notice is amended by order of the board.

6. IBID.—BOARDS—JURISDICTION.—Two members of a board of county canvassers have the power to call a meeting of the board and hear contests in the absence of and against the protest of the chairman.

7. IBID.—CONTINUANCE.—Time for presenting contests before a board of canvassers is within discretion of the board and not reviewable except in cases of abuse. Where time is asked of a county board to summons witnesses, it is well to accompany the motion with an affidavit, giving names and residences of witnesses.

8. IBID.—Provisions of election statutes as to administering oath to voters, railing off places for voters to stand, permitting only one voter to stand therein at one time, permitting no one to speak to the elector while voting except managers, placing election box so that the public may see it, are directory and should be observed, but their violation held here not to have vitiated the result.

Writ of *certiorari* from this Court to the State Board of Canvassers upon the petition of W. A. Davis and W. M. Craig.

*Messrs. Claude E. Sawyer, G. L. Toole* and *D. W. Robinson,* for petitioners.

*Messrs. Croft & Croft, Hendersons, J. B. Salley* and *Davis, Gunter & Gyles,* for respondents.

July 30, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. On the 17th August, 1909, an election was held in Aiken county on the question whether alcoholic liquors should be sold therein. When the county board of canvassers met, on August 24th, to canvass the vote and declare the result, the relators, Davis and Craig,

filed notice and grounds of contest of certain precincts at which the majority of the votes, as certified by the managers, was "for sale;" and two other citizens, Johnson and Powell, filed notice and grounds of contest of certain precincts at which the majority was "against sale." The board adjourned to meet August 30th, to hear these contests. On that day the attorneys for Johnson and Powell demurred to the grounds of contest filed by relators for insufficiency, in failing to allege that the irregularities and illegalities of which they complained affected the result of the election. The demurrer was sustained, and a motion to amend, by making the allegation, was refused and the contest dismissed. The result declared was "for sale" by a majority of 167 votes. On appeal, heard on September 3d, the State board recommitted the entire record with instructions to the county board "to recanvass the vote for Aiken county * * * and hear and consider the ground of protest filed by C. E. Sawyer, attorney for protestants, and to take such testimony and evidence as may be competent offered in support and rebuttal of the same, and to determine the result, and, having done so, to transmit to this board the result of said canvass, together with its conclusions and findings upon the ground of protest, as well as all testimony and other records and papers connected with the same, required to be transmitted to this board by section 217 of Code 1902, the same to be returned to this board not later than Thursday, September 9, 1909."

On September 6th two of the county board, which was composed of three members, issued a notice of a meeting of that board to be held on September 7th, at 11 o'clock, to proceed with the hearing. This notice was served on the attorneys for all parties and the chairman of the board between 10 and 11 o'clock on the 6th. Later, on the same day, the chairman issued a notice for a meeting of the board on the 8th, at 10 o'clock. Pursuant to their notice, two of the board met on the 7th. The regular chairman having

sent word that he could not attend, they organized by elect-
ing one of their number chairman, and announced their
determination to proceed with the hearing.

The attorneys for the relators demurred to the jurisdic-
tion of the board, as thus organized, contending that the
meeting was illegal because it had not been called by the
regular chairman. They also moved for a continuance
until the next day, on the ground that they had not had time,
since receipt of notice of the meeting, to summon their wit-
nesses, some of whom they stated lived more than twenty
miles from the courthouse.

The demurrer and motion was overruled, and the board
limited the time for the taking of testimony to three hours
and a half to each side, and for argument to one hour to
each side. Four witnesses were examined that day, and
the record shows that, at the conclusion of the testimony
on the next day, relators had consumed only two hours and
twenty-one minutes of the time allowed them.

After hearing the evidence and arguments, the board
dismissed both contests and certified the result as before.
Both sides appealed. The State board heard the appeal
September 10th. As the time within which the board is
allowed to perform its duties is limited by statute (Code
1902, vol. I, sec. 229), the State board, finding that it was
necessary for them to dispose of the matter on the 10th, as
after that date they would be *functus officio* (*Ex parte
Mackey,* 15 S. C., 329; *Ex parte Elliott,* 33 S. C., 603, 12
S. E., 423), limited the time for the hearing to two hours
and a half to each side. The testimony had been taken
stenographically, and had not been transcribed, and hence
had to be read to the board by the stenographer. The board
reserved the right to have such parts of the testimony read
by the stenographer as they, or either of them, desired.
After hearing so much of the testimony as the respective
sides caused to be read, and the arguments, the board sus-
tained the contest of both sides as to certain precincts, and

overruled them as to all others; but, finding that the result was not thereby changed, they dismissed both contests.

Thereupon the relators sued out a writ of *certiorari* in the original jurisdiction of this Court to review the action of said board.

In reviewing the action of an inferior tribunal, on writ of *certiorari,* this Court will correct errors of law, but will not review the findings of fact. *Ex parte Riggs,* 52 S. C., 298, 29 S. E., 645; *Welsh* v. *Board,* 79 S. C., 246, 60 S. E., 699. The relators contended, however, that the findings of fact of the State board relative to the grounds of their contest are not binding upon the Court, because they are not judicial findings based upon consideration of the testimony, as the board heard only a part of it. The record shows that all of the testimony was not read to the board, but it does not show what parts were read and what were not. We must assume, therefore, that the findings of the board were based upon a consideration of the testimony bearing upon the facts found. But findings of fact, which are contrary to any reasonable conclusion or inference from the evidence, or which have no evidence at all to support them, may be corrected as errors of law.

Construing the Constitution and statutes of this State, this Court has held that the production of a registration certificate and proof of the payment of all taxes, including poll tax, assessed against an elector and collectible during the previous year, are conditions prerequisite to his right to vote; and that every vote cast without compliance with these conditions is illegal; and that when it appears that enough illegal votes were cast in an election to change the result or make it doubtful, it will be declared void. *Wright* v. *Board,* 76 S. C., 574, 57 S. E., 536; *Gunter* v. *Gayden,* 84 S. C., 48.

The only reasonable inference that can be drawn from the testimony is that one or the other of the above mentioned

conditions—and in some instances both—were not complied with at the following precincts: Banks Mill, Bloomingdale, Kitchings Mill, Otts, Wagener and Windsor. At some of them the managers agreed that they would not require the production of registration certificates or proof of the payment of taxes. At some they required one, but not the other. An attempt was made to show compliance with the law by proving that the managers knew the voters personally, and were satisfied that they had registration certificates; and that they had paid their taxes, by showing that the managers either knew or were informed that the sheriff had not been in the neighborhood to levy and collect tax executions, and the inference was that all the people had paid their taxes. Such a palpable attempt at evasion of the law will not be tolerated. Just what proof of payment of taxes, other than the certificate or receipt of the officers authorized to collect taxes, which is made conclusive proof thereof, will satisfy the statute it is not now necessary to decide. But when the legislature used the word "proof," it meant legal any competent evidence, furnished by affidavit, or in some other legal form, and such as would satisfy a reasonable mind of the truth. The lawmaking power has declared that a registration certificate and proof of payment of taxes must be produced at the polls. Neither the Courts nor the managers of election have any power to dispense with either of these mandatory requirements of the law.

In the elections reviewed in *Wright* v. *Board* and *Gunter* v. *Gayden,* it appeared that the illegal voting was so general that the whole election was thereby affected, and, therefore, vitiated. But when the illegal voting is confined to only a few of many precincts, the rejection of the vote of the precincts thereby affected will not necessarily vitiate the entire election. There may be cases, however, in which the number of precincts rejected on account of fraud or illegal voting is so large that the whole election

will be declared void, even though the result at the other precincts would remain unchanged. Where fraud or illegality in an election is so general that it appears that a free and fair expression of the popular will has not been obtained, the whole election will be set aside.

When the polls can be purged of the illegal votes this should be done, and only the illegal votes should be rejected, and the legal votes should be counted. But when this cannot be done the entire polls must be thrown out, if it appears that enough illegal votes have been cast to affect the result at such poll, or to leave it in doubt.

In this case it appears that enough illegal votes were cast at each of the above named precincts to have changed the result at such precinct, or, at least, to have left it in doubt. As it was not shown by whom or on which side of the question the illegal votes were cast, and as the polls could not, therefore, have been purged of them, the entire vote at each of said precincts should have been thrown out. Upon the same grounds upon which we have found that the vote at the above named precincts should have been rejected, the State board did reject the polls at Creed's Store, a precinct contested by the relators, and, also, those at White Pond and Silverton, precincts which were contested by Johnson and Powell; and they should have rejected the poll at Montmorenci, another precinct contested by Johnson and Powell.

The next question is whether the county board erred in admitting testimony to support the contest of Johnson and Powell, and whether the State board erred in sustaining their contest as to certain precincts. The relators contended that, as there was no appeal by Johnson and Powell from the first decision of the county board, they are concluded; also, that, by the terms of the order of the State board, recommitting the matter, only the relator's contest was to be heard. It is apparent that the contest of Johnson and Powell was filed for no other purpose than to offset the possible effect upon the result of the

election by the rejection of some or all of the precincts contested by the relators. Therefore, when the board decided to dismiss the contest of the relators, what would have been the use to consider the other? No matter what disposition had been made of it, in whole or in part, the result would not have been changed. Therefore, it was not considered or decided.

But we think the terms of the order of the State board broad enough to require the consideration of that contest by the county board. It will be noted that "the entire record" was recommitted with instructions to *"recanvass* the vote for Aiken county," and not merely the precincts contested by relators. In *State* v. *Nerland,* 7 S. C., 246, quoted with approval in *Ex parte Mackey,* 15 S. C., 332, Chief Justice Moses said: "The term (canvassers) employed to designate the duty to be performed by the commissioners would seem to impose an obligation beyond that of merely counting the ballots and comparing the statement of managers. 'Canvassing' implies 'search,' 'scrutiny,' 'investigation,' 'examination,' etc.". The fact that the order of the State board specifically required certain things to be done with regard to the contest of the relators does not exclude the consideration of the other contest, especially when the board were required by that order to *recanvass* the vote for the whole county, when the contest of relators covered only a few precincts.

With respect to some of the precincts contested by the relators, the petition herein states other grounds than those stated in the notice of contest filed with the county board. The Court will not consider any other grounds than those stated in the notice filed. While the statute does not specify any method of procedure in such contests, and while, perhaps, technical precision in pleading should not be required, still reason and justice require that the grounds relied upon should be stated so plainly and clearly that the contestee may prepare to meet them without

unnecessary labor or expense; and, unless the notice is amended by order of the board, the contestant will be held to the grounds alleged, and the admission of evidence will be restricted accordingly. As well might the notice specify one precinct, and the contestant be allowed to introduce evidence as to another.

The next question is whether the demurrer of contestants to the jurisdiction of the board, as organized on September 7th, and the legality of that meeting, should have been sustained. The statute does not provide how or by whom meetings of the board shall be called. In the absence of such provision, it was competent for the majority to call the meeting. The rule is that "where a body or board of officers is constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law, it is not necessary that all should concur in the act done. The act of the majority is the act of the body." *Abbeville* v. *McMillan,* 52 S. C., 60, 29 S. E., 540.

The next question is, whether there was error in not allowing more time for the production of witnesses before the county board, and more time for the hearing of the appeal by the State board. The time allowed in such cases must necessarily be left to the discretion of such boards, and the Court will not interfere, unless there was a manifest abuse of the discretion to the prejudice of the complainant. The time fixed by the statute within which the boards are required to discharge their duties shows that a speedy determination of such contests was contemplated and intended. And there are strong reasons resting in a sound public policy why such contests should be brought to a speedy determination. From the circumstances of the case, both boards were under the necessity to act promptly, and both have found as a fact that the time allowed was sufficient, and we think their finding was warranted under the circumstances. Moreover, the motion

addressed to the county board for more time to procure
witnesses was not supported by affidavit, as it should have
been, naming the witnesses and stating their places of resi-
dence, so that the board could the more intelligently have
decided how much time could be allowed within the limit
allowed them by the State board.

Section 208, volume I, Code 1902, provides that "the
managers shall administer to each person offering to vote
an oath that he is qualified to vote at this election, according
to the Constitution of this State, and that he has not
voted during this election." And section 212 pro-
vides, that "at each precinct, a space or enclosure,
such as the managers of election shall deem fit and sufficient,
shall be railed off or otherwise provided with an opening at
one end or side for the entrance of the voter, and an opening
at the other for his exit, as a voting place in which to hold
the election * * *. And the ballot box shall be so located
as to be in view of persons outside of the polling place,
during the time of voting * * *. But one voter shall be
allowed to enter any voting place at a time, and no one,
except the managers, shall be allowed to speak to the voter
while in the voting place casting his vote."

The violation of one or more of the foregoing provisions
of the statute is alleged as the ground of contest of the
following precincts: Aiken, Oak Grove, Bath, Kneece's
Mill, Salleys, Seivern and Shaws Fork. The State can-
vassers have found, as a fact, that the election was fair,
and that none of the things above mentioned affected the
result, and that some of the allegations were not sustained
by the evidence. This finding cannot be reviewed.

. Moreover, the provisions above quoted are merely direc-
tory and not mandatory or imperative; and it is well settled
that the violation of such provisions of a statute as merely
regulate the conduct of elections are not, in the absence of
fraud, vitiative, unless it is made to appear that the result
was thereby affected. *DeBerry* v. *Nicholson,* 109 N. C.,

465, 11 Am. St. R., 787; *Parvin* v. *Wimberg,* 130 Ind., 561, 30 Am. St. R., 254; *Patton* v. *Watkins,* 131 Ala., 387, 90 Am. St. R., 43, 6 Cyc., 362. These provisions of the statute should, however, be observed by the election officers, whose sworn duty is to administer the law as enacted by the legislature.    It has been well said that before an election all provisions of the statute should be deemed and held by the officers of the election to be mandatory.    Any wilful neglect of duty by such officers is made a misdemeanor by statute.    Sec. 284, Crim. Code.

Notwithstanding the errors of the State board, which we have pointed out, we find, upon examination of the vote at the other precincts in the county, that they give a majority "for sale."    Therefore, the illegalities complained of have not affected the result of the election, as declared by the board.    As there was no fraud, and the illegal voting was not so general as to warrant the conclusion that the election was not a free and fair expression of the popular will, it will be sustained.

Petition dismissed.