15394

MAY v. WILSON *ET AL.*

(19 S. E. (2d), 467)

October, 1941.

The order of Judge Stoll, ordered to be reported, follows:

This matter comes before me at the instance of the petitioner to review a ruling of the State Board of Canvassers for Municipal Primaries made on an appeal from a ruling by the Democratic Executive Committe of the City of Greenwood, relative to the nomination of alderman from Ward 1 of that city in a primary election held March 25, 1941.

There were two candidates seeking the nomination, the petitioner, W. P. May, and the respondent, James L. Hollingsworth. Before the vote was counted, Hollingsworth protested certain absentee ballots and those were segregated by the managers and not counted. Of the regular ballots cast the count showed 182 for Hollingsworth and 164 for May. There were 56 absentee ballots. On March 27, the Executive Committee met to canvass the returns and declare the result. The committee heard evidence and argument of counsel for the respective parties relative to the legality of the absentee votes, and ruled that 55 of the absentee ballots were handled irregularly and should not be counted and declared Hollingsworth as the nominee of the party. Within due time, W. P. May appealed to the State Board of Canvassers for Municipal Primaries. The appeal was heard on July 8, 1941, after consideration of which the board pronounced its ruling by the following resolution:

"It appearing that the applications for absentee ballots and the conveying of same to the voters was largely done by W. P. May, a candidate, who in most instances was present at the time of the marking of the ballot and that the 55 absentee ballots marked by the voters were retained by the candidate for several days before delivery by him to the election officials only a short time before the closing of the

polls; and it further appearing that in a number of instances the affidavit of the voter was not signed in the presence of the notary, * * *

"Be it resolved, that the action of the Democratic Executive Committee of the City of Greenwood in refusing to count the said 55 absentee ballots be affirmed, and that James L. Hollingsworth be declared the nominee of the party.

"The foregoing resolution was adopted by a vote of 3 to 2,—W. B. Wilson, J. M. Moorer and J. Moore Mars voting aye and Edgar A. Brown and LeRoy Anderson voting no."

On July 21, 1941, this proceeding was commenced by petition presented to Judge T. S. Sease who issued a rule against the members of the State Board of Canvassers for Municipal Primaries to show cause before me on September 29, 1941, why a writ of certiorari should not be issued to require the board to certify unto the Court all of the record in the said proceeding "that what is lawful in the premises may be done." W. B. Wilson, as chairman of the State Board of Canvassers for Municipal Primaries, anticipating that the writ would be issued, filed the record of the board along with his return. The respondent, Hollingsworth, also filed a return stating that he was ready and willing to have the matter heard by the Court.

A review by the Court of the action of the State Board of Canvassers for Municipal Primaries must be confined to the correction of errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by the evidence. *Young v. Sapp,* 167 S. C., 364, 166 S. E., 354; *State ex rel. Davis v. State Board of Canvassers,* 86 S. C., 451, 68 S. E., 676; *Ex parte Riggs,* 52 S. C., 298, 29 S. E., 645; *Welsh v. State Board of Canvassers,* 79 S. C., 246; 60 S. E., 699; *Hyde v. Logan,* 113 S. C., 64, 101 S. E., 41; *Jennings v. McCown,* 97 S. C., 484, 81 S. E., 963.

The findings of fact as expressed in the resolution of the board are well sustained by the evidence and are accepted as the facts of this case. The function of

the Court, therefore, is merely to determine whether votes cast under the circumstances shown by these facts are legal and should be counted. The test is whether they meet the requirements reasonably construed of the rules of the Democratic Party and the statute law of the State relative to voting by absentees at primary elections, Sections 2406 to 2415, inclusive, of the Code of Laws of South Carolina. The rules and law applicable to this particular case are the same.

Section 2408 relative to forwarding of the ballot is as follows: "§ 2408. Forwarding of Ballot, etc.—The committee on enrollment or club secretary, shall, upon receipt of the application for ballot, if the applicant is duly registered in that precinct enroll the name and address of the applicant on a list to be kept by them for that purpose and deliver to applicant in person, or forward to the applicant, by registered mail the following: (a) An envelope containing the folded ballot, sealed and marked 'ballot within. Do not open except in presence of postmaster' (or other person mentioned in section 2411); (b) An envelope for resealing the marked ballot, on which is printed the 'voucher,' form of which is hereinafter provided; (c) A properly addressed envelope for the return of said ballot; (d) A printed slip giving full instructions regarding the manner of marking of the ballot, in order that the same may be counted, and how prepared and returned; (e) A 'coupon,' the form of which is hereinafter given."

This section of the law was violated in the case under consideration in that the secretary did not deliver the ballots and accompanying papers to the applicant in person or forward same by registered mail but a large number of the ballots was delivered by the secretary to W. P. May, a candidate, and by him taken to the voters.

Section 2411 relative to the marking and mailing of the ballot by the voter is as follows: "Upon receipt of the registered letter, forwarded by the committee on enrollment or club secretary, the voter shall not open the sealed envelope

marked 'ballot within,' except in the presence of the post-master, or his assistant, postal clerk, or rural letter carrier, or any one authorized to administer oaths, and shall then and there mark and refold the ballot without assistance and without making known the manner of marking same. He shall then and there place the ballot in the envelope pro-vided for the same, seal the same, and fill in and sign the voucher printed on the back of the envelope, in the presence of the postmaster, or other person hereinabove provided, who shall witness the same in writing. The envelope, to-gether with the coupon, which must be filled out and signed by the postmaster, or other person as herein provided, shall be enclosed within the envelope, directed to the committee on enrollment or club secretary, which shall then and there be sealed, registered, and mailed to the committee on en-rollment or club secretary."

This section of law was violated in that in most instances the candidate, W. P. May, was present at the time of the marking of the ballots and that 55 of the absentee ballots, after being marked by the voters, were delivered by them to W. P. May and retained by him for several days before he delivered them to the election officials only a short time be-fore the closing of the polls. This section was further vio-lated in that in a few instances the voucher printed on the back of the envelope was not signed in the presence of the notary, but was subsequently and improperly signed by the notary at some other time and place.

It frequently appears in an election contest that the illegal ballots are inseparably commingled with the legal ballots and it becomes necessary to declare the entire election void. In this case, however, the managers very wisely segregated the 55 absentee ballots which permitted the executive committee to purge these and declare the nominee of the party based upon a count of the ballots about which there was no ques-tion. The question now before the Court is as to the legality of the 55 absentee ballots.

Counsel for the petitioner, W. P. May, take the position that the established facts do not show fraud but show mere irregularities not of sufficient consequence to justify invalidating the ballots. In support of this position they cite Section 2415 of the Code, to the effect that the provisions relative to absentee voting shall be liberally construed in favor of absent voters. Counsel also cite *State ex rel. Davis v. State Board of Canvassers*, 86 S. C.., 451, 68 S. E., 676, 680, on the point that statutory provisions which merely regulate the conduct of elections are directory and not mandatory. In that case, the Court refused to overrule the State Canvassers and declare an election void because of irregularities as to the arrangement at the polling place. The Court held:

"The state canvassers have found, as a fact, that the election was fair, and that none of the things above mentioned affected the result, and that some of the allegations were not sustained by the evidence. This finding cannot be reviewed.

"Moreover, the provisions above quoted are merely directory, and not mandatory or imperative; and it is well settled that the violation of such provisions of a statute as merely regulate the conduct of elections is not, in the absence of fraud, vitiative, *unless it is made to appear that the result was thereby affected.* [Emphasis added]. *DeBerry v. Nicholson,* 102 N. C., 465, 9 S. E., 545, 11 Am. St. Rep., 767; *Parvin v. Wimberg,* 130 Ind., 561, 30 N. E., 790, 15 L. R. A., 775, 30 Am. St. Rep., 254; *Patton v. Watkins,* 131 Ala., 387, 31 So., 93, 90 Am. St. Rep., 43, 6 Cyc., 362. These provisions of the statute should, however, be observed by the election officers, whose sworn duty is to administer the law, as enacted by the Legislature. It has been well said that before an election all provisions of the statute should be deemed and held by the officers of the election to be mandatory. Any willful neglect of duty by such officers is made a misdemeanor by statute. Section 284, Cr. Code."

It is true that irrespective of this section (2415) the Courts will not invalidate an election on account of mere irregularities which do not affect the result or bring it into doubt. The Court, however, will not sanction practices which circumvent the plain purposes of the law and open the door to fraud.

It is patent that the General Assembly in the enactment of the law relative to voting by absentees at primary elections intended to create a right very valuable to civic minded citizens who wished to vote but were prevented from doing so on account of illness. It may be noted, though the point is not in issue in this case, that the statute provides for voting by mail only in a case where the voter is "absent on account of sickness," or "who on account of sickness cannot go in person to his or her voting precinct." Section 1 of Rule 47 of the Democratic party is broader, to-wit: "Any person being a qualified voter of this State, when absent, or who on account of sickness, cannot go in person to his or her voting precinct during any primary election may vote as hereinafter provided for." The legislature, evidently conceiving the probability of confusion and uncertainty as to results, as well as possible fraud, hedged this right with specific instructions which, if followed, would make it very difficult, if not impossible, for evil persons to commit fraud and would give citizens generally a feeling of confidence in the results of an election.

Fraud was not charged nor proven in this case, but the candidate who delivered the ballots to the voters and stood by while they were being marked had ample opportunity to practice fraud and undue influence on the voters. This candidate also had ample opportunity to have changed or suppressed ballots entrusted to him by the voters. The fact that the candidate had this opportunity to commit fraud, under circumstances which made it very difficult or impossible for his opponent to prove is a sufficient

ground upon which to invalidate these votes, irrespective of whether any fraud was actually committed or intended.

In *McKnight v. Smith*, 182 S. C., 378, 189 S. E., 361, 363, the Supreme Court had under consideration an election protest based upon the fact that upon the closing of the polls the managers took the ballot boxes and contents and excluded all others from the room where the election was being held and proceeded to count the votes and make their report in secrecy. The evidence showed that the door was closed by a deputy sheriff to keep order and that while there was no trouble, these measures were taken as a precaution, and that the only person who tried to gain admission was excluded because he was drinking. The contention was made that though Section 2309 of the Code, which requires that the votes be counted publicly was violated, that no harm was done because the evidence was to the effect that the votes were correctly counted. The Court held:

"A claimed correctness of the count, about which the petitioner was unable to offer any proof in the circumstances, cannot be invoked as a defense or justification of the action of the managers of the election in failing to comply with the plain mandate of the law as to how the votes should be counted."

In *Smith v. Saye*, 130 S. C., 20, 65, 125 S. E., 269, 282, the Court very clearly implies that there are irregularities or illegalities short of fraud which may invalidate an election. The Court said:

"There is absolute unanimity in the decisions of this court and elsewhere, that, in the absence of fraud, it is incumbent upon a contestant to show, not only that there were irregularities or illegalities in the conduct of an election, but that such irregularities or illegalities were either such as to produce an erroneous result or leave that question in doubt. But that where the election can be purged of such improper votes, and it is demonstrated that the result is the same as if they had not been cast, the election will not be disturbed."

The violation of the statutes hereinabove referred to, creates an illegality as well as an irregularity. These illegalities and irregularities are very flagrant and constitute ample grounds on which to invalidate the absentee ballots irrespective of fraud. To permit the handling of ballots in this manner would constitute an invitation to fraud. Such procedure would seriously endanger the whole system of primary elections.

I find that the Democratic Executive Committee of the City of Greenwood committed no error in excluding the 55 absentee ballots in question and declaring James L. Hollingsworth the nominee of the party; and that the State Board of Canvassers for Municipal Primaries committed no error in its finding of fact and its confirmation of the action of the executive committee. Therefore, it is

Ordered that James L. Hollingsworth be and is hereby declared the nominee of the Democratic party for the office of alderman for Ward 1 of the City of Greenwood.

*Mr. Norman A. Harrison,* of Greenwood, for appellant,

*Messrs. Mays & Featherstone,* of Greenwood, for respondents,

March 27, 1942.

*Per curiam.*

The appellant has failed to comply with the rule of this Court (Rule 8, Section 2) by stating in his brief the "questions involved;" and it is very doubtful if some of the warranted exceptions comply with Rule 4, Section 6.

Waiving all of this, we have carefully read the record herein, and are satisfied with the result of the order of Hon-

orable P. H. Stoll, Circuit Judge, from which this appeal is prosecuted; and we direct that said order, with minor changes and some deletions made by us, be published as the opinion of this Court.

Affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE, concur.