15462

LANEY *ET AL.* v. BASKIN *ET AL.*

(22 S. E. (2d), 722)

*Mr. A. S. Merrimon,* of Sumter, and *Mr. C. B. Ruffin,* of Bishopville, Counsel for Petitioners,

*Messrs. Tison & Miller,* of Bennettsville, *Mr. Robert E. Wilson,* of St. Charles, and *Mr. John Henry Ellen, Jr.,* of Bishopville, appeared as Counsel for the Respondent.

November 10, 1942.

The Opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM:

In the primary election of August 25, 1942, W. P. Baskin, Jr., Esquire, and N. J. Laney, Esquire, were candidates for the office of State Senator from Lee County. The Democratic Executive Committee for Lee County sat to canvass the votes and to declare the election, and declared W. P. Baskin, Jr., to have received the majority of the votes cast for the office of State Senator for that county and thereupon proclaimed him the nominee of the party. N. J. Laney and others filed a protest against that declaration, and against other declarations of that committee, and alleged certain irregularities and illegalities thereabout.

The Democratic Executive Committee for Lee County heard and considered the protest, and in due time dismissed it and reaffirmed its declaration that W. P. Baskin, Jr., was the duly and lawfully named nominee of the Democratic party as Senator from that county, and that C. W. Josey and C. M. Mims were the duly and lawfully named nominees of that party for the House of Representatives from that county. The protestants appealed to the State Executive Committee of the Democratic party from the action of the County Democratic Executive Committee, which appeal was heard by the State Democratic Executive Committee at its meeting on September 15, 1942, upon which appeal W. P. Baskin, Jr., C. W. Josey, C. M. Mims and H. C. Jennings, as chairman of the Lee County Executive Committee of the Democratic party of South Carolina, for himself and for the members of that committee were, in effect, the respondents. The appeal was heard upon the record sent up to the

State Democratic Executive Committee from the County Democratic Executive Committee.

Counsel for the appellants and for the respondents were heard by the State Democratic Executive Committee, and in due time that committee filed its findings and conclusions denying the appeal and affirming the action of the County Democratic Executive Committee declaring W. P. Baskin, Jr., to be the nominee of the party as Senator for Lee County, and C. W. Josey and C. M. Mims to be the nominees of the party for the House of Representatives.

Thereupon the protestants applied to this Court for a writ of certiorari directing the State and County Democratic Executive Committees to certify to this Court the records in the proceedings before both committees, and requiring them to produce before this Court all affidavits, pleadings, petitions, and all other records, exhibits, motions, objections and other written matter, notices and papers filed with or in the hands of both committees, and the ballot boxes and ballots and all records required to be kept in connection with the voting in the said primary election, and all records and lists required to be kept in connection with the absentee ballots, and all vouchers, coupons, lists of voters, polling lists, tabulations, return, and the findings of the State Democratic Executive Committee.

The writ of certiorari was signed by the Chief Justice, requiring the State Democratic Executive Committee and the County Democratic Executive Committee to file their certified records and to make their returns or file other pleadings to the writ on October 2, 1942, and setting the hearing upon the petition, the certified record and other pleadings, to be held on the 16th day of October, 1942, that being Friday of the week of the session of the Court.

It appeared by the docket of the Court that there were three other writs of certiorari issued in matters relating to and growing out of the primary election of that date, and it was necessary for the Court to know just what would be

the order of procedure in hearing the various cases. The attorneys in those cases were notified to appear before the Court at ten o'clock of the first day of its sitting, when these matters would be taken up so far as the procedure was concerned. After argument of counsel, the matter was taken under consideration by the Court, and it was decided that the matters would be heard upon the principle that a review by the Court of the action of the State Democratic Executive Committee must be confined to errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by the evidence, and counsel were instructed that it would not be necessary for them to have before the Court the ballot boxes, the ballots, lists of voters, lists required to be kept in connection with absentee ballots, vouchers, coupons, tabulations, and polling lists. Thereafter, on Friday, October 16, 1942, the case came on to be heard under this statement of the Court.

Upon an announcement by the Court that the appeal would be considered upon the record before the State Democratic Executive Committee and upon its action in the matter, counsel for respondents withdrew a demurrer which they had previously filed.

Counsel for the appellants requested additional time, which was granted, in which to present their case, and the same time was granted to the respondents, with time in reply by the appellants.

The argument before this Court covered a wide range, arising out of the following group of questions which the appellants present for the consideration of the Court:

"I. Was not the distribution, handling and voting of absentee ballots in the manner shown by the evidence in violation of the Rules of the Democratic Party and the Statute Law of the State?

"II. Should not the box at the Lynchburg precinct have been thrown out and the votes therein not have been taken into account?

"III. Did not the distribution, handling and voting of absentee ballots in the manner shown by the evidence change the result of the election or leave the result in doubt?

"IV. "Should not the petitioners' request made to the County Executive Committee that the proceedings upon the hearing of the protest be taken and reported by a stenographer, that the testimony be given by the witnesses in person, sworn before the Committee, and that the petitioners in the presence of the Committee be permitted to examine the ballot boxes and ballots and records therein contained, and that the County Committee itself examine the said ballot boxes and ballots and records therein contained, have been granted; should not the objection to the Chairman of the County Committee participating in the hearing have been sustained; and should not the State Executive Committee have required the Ballot Boxes and ballots and records therein contained be sent to it for its examination?"

The sole purpose of this Court in considering the questions raised by this writ of certiorari by which the State Democratic Executive Committee has been required to certify to it the records upon which its action was based, is to determine whether any errors of law were made by the State Democratic Executive Committee, and if so, to correct them. We have no right to consider the facts upon which that committee acted except to ascertain whether the action of that committee was wholly without evidence to sustain it.

All of the questions relating to the casting of the absentee ballots, and the manner of their handling, distribution and voting, and the questions relating to the conduct of the primary election, including the question of the box at the Lunchburg precinct, were before the State Democratic Executive Committee, and were considered by them, and their action affirming that of the County Democratic Executive Committee makes it clear that they found no irregularities or illegalities of such a nature as would change or leave in

doubt the result of the primary election, or such as to sustain the other charges of the appellants regarding such alleged irregularities and illegalities.

In the case of *Young v. Sapp et al.,* 167 S. C., 364, 166 S. E., 354, this Court said at page 369 of the State reports at page 356 of 166 S. E.: "Our review of the action of the State Democratic Executive Committee must be confined to the correction of errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by evidence." (Citing several cases.)

Similarly in the case of *Jennings et al. v. McCown et al.,* 97 S. C., 484, 81 S. E., 963, it is stated on page 486 of 97 S. C., on page 964 of 81 S. E.: "It is well settled that this court will not review the findings of fact of an inferior court or body, on writ of certiorari, unless they are wholly unsupported by the evidence."

In the case of *State ex rel. Welsh v. State Board of Canvassers,* 79 S. C., 246, this Court said at page 248, 60 S. E., 699, at page 700: "Unless the result of an election is changed or rendered doubtful, it will not be set aside on account of mere irregularities or illegalities. [Citing authorities.] It is likewise well settled that as to findings of fact the state board of canvassers is a tribunal of last resort. *Ex parte Whipper,* 32 S. C., 5, 10 S. E., 579. Therefore, unless we are able to discover error in their conclusions of law, the petition must be dismissed." ·

Similarly, in the case of *Hyde et al. v. Logan et al., Boykin et al. v. Logan,* 133 S. C., 64, at page 76, 101 S. E., 41, at page 44, this Court used the following language: "But the rule is well settled that errors which do not appear to have affected the result will not be allowed to overturn an election, and every reasonable presumption will be indulged to sustain it."

In the recent case of *Brockman v. Barry et al.,* 195 S. C., 199, 11 S. E. (2d), 137, 138, Mr. Justice Stukes, speaking for a unanimous Court, adopted the language which has just

been quoted from the case of *Hyde v. Logan, supra,* and held this to be "the settled rule in this State."

One of the most recently delivered opinions of this Court in connection with cases of the nature of the present one is the unanimous decision in the case of *May v. Wilson et al.,* 199 S. C., 354, 19 S. E. (2d), 467, decided in March, 1942. In that case this Court said at page 356 of 199 S. C., at page 468 of 19 S. E. (2d) : "A review by the Court of the action of the State Board of Canvassers for Municipal Primaries must be confined to the correction of errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by the evidence." (Citing many cases.)

And on page 359 of 199 S. C., on page 470 of 19 S. E. (2d), of the same opinion, we find this quotation from *State ex rel. Davis v. State Board of Canvassers,* 86 S. C., 451, 68 S. E., 676 :

"The state canvassers have found, as a fact, that the election was fair, and that none of the things above mentioned affected the result, and that some of the allegations were not sustained by the evidence. This finding cannot be reviewed.

"Moreover, the provisions above quoted [Sections 2406 to 2415, inclusive, of the Code of Laws of South Carolina for 1932] are merely directory, and not mandatory or imperative ; and it is well settled that the violation of such provisions of a statute as merely regulate the conduct of elections is not, in the absence of fraud, vitiative, unless it is made to appear that the result was thereby affected."

And on page 360 of 199 S. C., on page 470 of 19 S. E. (2d), of the same opinion we find : "It is true that irrespective of this section (2415) the Courts will not invalidate an election on account of mere irregularities which do not affect the result or bring it into doubt."

Under the statutes and rules of the Democratic party, ■■ everything relating thereto must be indulged in favor of the liberal construction of such statutes and rules, and in favor of the free exercise by the absentees of their right of suffrage. The State Democratic Executive Committee, and the County Democratic Executive Committee, have found that there was nothing in the circumstances which would warrant declaring the election invalid, and therefore this Court is bound thereby and must uphold their action.

The first three questions of the protestants are disposed of by what we have just said. As to the fourth question, we are of the opinion that it was entirely within the discretion of the County Democratic Executive Committee whether they should have appointed an official stenographer to report the proceedings of the committee, and, similarly, that it was within the discretion of that committee as to whether the testimony should have been given by affidavits or by witnesses who were presented in person. Likewise, we think it was in the discretion of the county committee as to whether the protestants, in the presence of the committee, should have been permitted to examine the ballot boxes and ballots and the records therein contained. It must be borne in mind that the committee was composed of members from all over the county. The time within which the results of the primary election were to be canvassed and declared was very limited, and unless the protestants had shown irregularities on the part of the various precinct officers, it cannot be charged as a ground for setting aside the election that the County Democratic Executive Committee did not permit the protestants to open the ballot boxes and count the ballots as would have been necessary if the request of the protestants had been granted. Our study of the record in this case convinces us that the circumstances attendant upon the hearings before both committees were such as to bring the case unquestionably within the holding of this Court in the case of *State ex rel. Davis v. State Board of*

*Canvassers,* 86 S. C., 451, in which the Court said at page 459, 68 S. E., 676, at page 679: "The next question is whether there was error in not allowing more time for the production of witnesses before the county board, and more time for the hearing of the appeal by the State Board. The time allowed in such cases must necessarily be left to the discretion of such boards, and the court will not interfere, unless there was a manifest abuse of the discretion to the prejudice of the complainant. The time fixed by the statute within which the boards are required to discharge their duties shows that a speedy determination of such contests was contemplated and intended. And there are strong reasons resting in a sound public policy why such contests should be brought to a speedy determination. From the circumstances of the case, both boards were under the necessity to act promptly, and both have found as a fact that the time allowed was sufficient, and we think their finding was warranted under the circumstances. Moreover, the motion addressed to the county board for more time to procure witnesses was not supported by affidavit, as it should have been, naming the witnesses and stating their places of residence, so that the board could the more intelligently have decided how much time could be allowed within the limit allowed them by the State Board."

We are of the opinion that if the State Democratic Executive Committee had required the ballot boxes and ballots and records therein contained to be sent to it for its examination, such examination would have consumed the entire time of the hearing in counting the ballots, and that neither that committee nor the county committee, could have made such an examination within the time at their disposal under the statutes and under the rules of the Democratic party.

All of these matters were presented by the protestants to the State Democratic Executive Committee, and their action thereabout, we think, was correct, all of such matters, under

the circumstances of this case, being within the discretion of that committee.

At the time of the hearing before the County Democratic Executive Committee, an effort was made to impugn the conduct of Mr. Jennings, when an affidavit of the protestant, N. J. Laney, was read, seeking to prevent Mr. Jennings, as chairman of that board, from participating in the proceedings, by an attempt to disqualify him. In regard to the question as to whether it was a ground of contest sufficient to set aside the action of the County Democratic Executive Committee that Mr. Jennings sat with it upon the hearing, it appears that the State Democratic Executive Committee did not think so, and we think they were correct.

Mr. Jennings was performing a public duty, and it appears from the record that he was doing so with the approval of the entire county committee, and no ground has been shown why he should have been disqualified. The State Democratic Executive Committee has approved the action of the County Democratic Executive Committee thereabout, and we approve their action.

A careful consideration of the record convinces this Court that the action of the State Democratic Executive Committee, with reference to all questions before the Court in this case, should be affirmed. It is, therefore, the judgment of the Court that the writ of certiorari heretofore issued be and it hereby is quashed, and the judgment of the State Democratic Executive Committee be affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.