17223

L. H. RUTLAND *et al.*, Appellants, v. CITY OF SPARTANBURG
*et al.*, Respondents

(95 S. E. (2d) 443)

256

*Messrs. Simpson Hyatt* and *James J. Raman,* of Spartan-
burg, *for Appellants,*

*Messrs. Means & Browne, T. E. Walsh, R. B. Pasley, Sr.,*
and *John G. Galbraith,* all of Spartanburg, *for Respondents,*

November 20, 1956.

LEGGE, Justice.

Pursuant to the procedure prescribed in Title 47, Chapter 1, Article 2 of the 1952 Code, relating to the extension of the corporate limits of cities and towns, a petition of freeholders in the Park Hills-Airport area, adjoining the City of Spartanburg, praying that the said city extend its corporate limits to include that area, was filed with the city council on June 15, 1955; and on June 28, 1955, a special election on the question was held. Thereafter, the commissioners of election having certified that the election had resulted in favor of the annexation, the city council on July 14, 1955, adopted a resolution declaring the said Park Hills-Airport area a part of the City of Spartanburg.

On October 11, 1955, appellants and others, freeholders of the said area, on behalf of themselves and all others similarly situated, brought this action against the City of Spar-

tanburg and its governing officials, with whom were joined the Spartanburg County Commissioners of election, alleging that the election and subsequent proceedings were invalid, and praying that the city and its officials be enjoined from exercising authority or control over the said area. The cause was referred generally to the Master for Spartanburg County, who in due course filed his report finding as a fact that there had been no such irregularities in the conduct of the election, or errors in the decision of the commissioners in their canvass thereof, as would have affected the outcome, and recommending that the complaint be dismissed. On appeal therefrom, the Honorable J. Robert Martin, Jr., Presiding Judge, issued his decree dated February 29, 1956, whereby he overruled all exceptions, confirmed the report of the Master, and dismissed the complaint. Appeal here is from that decree.

Appellant's exceptions charge that the lower court erred in not holding the election invalid, because:

1. The city council did not, before certifying to the commissioners of election that a majority of the freeholders in the Park Hills-Airport area had signed the petition for annexation, find the names and number of all freeholders in that area and the names and number of those who had signed the petition. (Exceptions 1 and 2.)

2. There had been held, within two months prior to the election, an election on the question of annexing substantially the same area, which former election had resulted adversely to the proposed annexation. (Exceptions 3, 4, 5 and 6.)

3. The ballots were not numbered. (Exceptions 7 and 8.)

4. The commissioners of election had found as a fact that the ballot box had been opened during the hours of balloting. (Exception 9.)

5. The admitted irregularities were such as would have affected the result of the election, in that the total of the contested ballots and the illegal ballots exceeded the number of votes by which the election carried. (Exceptions 10, 11, 12 and 13.)

The first of these contentions will not be considered, ■ because it was not made in the lower court. *State v. Burnett, Jr.,* 226 S. C. 421, 85 S. E. (2d) 744; *State v. Alexander,* S. C., 95 S. E. (2d) 160; *State v. Bolin,* S. C., 95 S. E. (2d) 163. The record before us shows that at the first reference before the Master plaintiff's counsel stated that they were abandoning "any contentions concerning the inadequacy of the petition on which the annexation election was called" and "any contentions concerning the inadequacy of a majority of the freeholders having signed the petition". The Master's report contains the following, to which no exception was taken:

"The plaintiffs, in their original complaint, not only contended that the petition requesting the election did not contain a majority of the freeholders within the territory, but also contended that there were certain election irregularities committed during the conduct of the election on June 28, 1955. At the hearing, however, the plaintiffs, through their counsel, abandoned any contentions except those concerning the alleged election irregularities on the day of the election and the subsequent decision of the county election commission in counting certain ballots".

Apart from the fact that appellants' second contention appears, from the portion of the Master's report ■ just quoted, to be now untenable, we find no merit in it, for the following reasons:

1. There appears to be no statute limiting the number of annexation elections that may be held relating to the same area, or prescribing a period that must elapse between two such elections;

2. There was no allegation in the complaint that to hold the election in question within two months after the former one was unreasonable; and

3. The lower court found as a matter of fact that the two elections did not involve the same area; and there is no exception to such finding.

■  Admittedly the ballots were not numbered. Appellants contend that they should have been perforce Section 23-309 (2) of the 1952 Code, and that failure in that regard invalidated the election. But Section 23-309, subsection (2) of which provides that ballot stubs shall be "prenumbered consecutively, beginning with No. 1"; relates to general election ballots, with which we are not here concerned, the election in question having been a special one.

Appellants have failed, moreover, to show that the absence of numbers on the ballots or stubs, whether or not required by statute, affected the result of the election. The obvious purpose of such numbering is to facilitate accounting for the ballots in each voting place by the managers and, later, by the commissioners of election in their canvass. In the election here challenged, no issue is made with regard to the vote within the City of Spartanburg, 485 in favor of the annexation and 11 opposed to it. The controversy here is with regard to the election within the Park Hills-Airport area, where the canvass by the commissioners of election showed that 434 had voted in favor of annexation and 415 in opposition to it. Mr. J. L. Brooks, chairman of the election commission, testified without contradiction that, the box managers having failed to make the required return showing disposition of all ballots delivered to them, he and the other commissioners themselves made a check of the ballots used and unused, and that they checked out correctly against the total number of ballots that had been delivered to the managers. Under this testimony there was introduced in evidence the tabulation of the votes, made by the commissioners of election, showing that of the 1,500 ballots printed and delivered to the voting place 852 had been voted and 648 returned; and the certification of the election commission, placed in evidence by the appellants, showed that three of the voted ballots had been declared invalid,—one because of erroneous checking, one because the voter had not resided in the area for the required period, and one because the voter did not reside within the area.

Appellants' contention that the ballot box had been opened during the hours of balloting is supported only by a stipulation that a Mrs. Aubrey Collins, if present, would testify:

"That she went to the Park Hills Elementary School to vote in the annexation election held June 28, 1955; that she was about fifth in line; that she was at the polling precinct before 8:00 a. m.; that she voted by about 8:10 a. m., and that while in line and prior to the time she voted she saw the ballot box open; that she worked at the Pacific Mills at Lyman and was at work at 8:30; that she did not know who opened the box".

It will be observed that this testimony does not specifically charge that the ballot box was opened during the hours of balloting. But even construed as so charging, it was flatly contradicted by the testimony of six witnesses, including the managers. The finding of the lower court that the ballot box had not been opened during the hours of voting is amply sustained by the evidence. Moreover, the statement in Exception 9 that "the County Election Commission found that the ballot box was opened during the hours of balloting" is not borne out by the record. The certification by the commission, as set forth in the transcript, makes no reference to any irregularities other than to say that "there were some technical irregularities, but none intentional on either side and none sufficient to change the result of the election".

Finally, it is contended that the number of questionable ballots was sufficient to have affected the outcome because the election as declared by the commissioners carried by a margin of nineteen (19) votes and the number of questionable ballots was twenty-three (23), as follows:

Ballots voted in excess of the number of persons who signed the poll list .............................. 14

Ballots of voters not registered in any precinct ........ 6

Ballot in an envelope not marked with name of voter or reason for challenge .............................. 1

Ballots in one "contested" envelope on which was written
the name of only one voter ....................... 2

       Total ............................. 23

That the box contained 14 more ballots than there were
signatures to the poll list is conceded. But the record clearly
shows that every person who voted had a proper registration
certificate, and that the failure of some of them to sign the
poll list was due to congestion of the voting line and con-
sequent oversight resulting from the fact that each regis-
tration certificate was checked by a representative of appel-
lants as well as by the managers. There were in evidence,
unobjected to and uncontradiced, affidavits by five of these
voters explaining thus their failure to sign the poll list.

Appellants offered no witness in support of their conten-
tion that six ballots should not have been counted because
those voters were not registered in any precinct. It appears
that the Park Hills-Airport area embraced not only the
Ardella precinct, where the voting was done, but parts of
other precincts the registration books of which were not at
the voting place; and Mr. Brooks, the chairman of the elec-
tion commission, testified without contradiction that the six
challenged ballots before mentioned were not counted until
the election commissioners had examined these books and
found that the voters whose ballots had been thus challenged
were properly registered and entitled to vote.

No witness was offered by appellants in regard to the
three other challenged ballots, and the record is by no means
clear as to whether they were counted or were the three bal-
lots shown by the certification of the election commission as
having been declared invalid. They merit no discussion,
however, because it is clear from what has been already said
that improper allowance of them would not have affected
the outcome of the election.

       The rule is well settled that an election will not be
declared invalid because of errors or irregularities
that do not affect the result or bring it into doubt.

*Hyde v. Logan,* 113 S. C. 64, 101 S. E. 41; *Brockman v. Barry,* 195 S. C. 199, 11 S. E. (2d) 137; *Laney v. Baskin,* 201 S. C. 246, 22 S. E. (2d) 722; *Berry v. Spigner,* 226 S. C. 183, 84 S. E. (2d) 381. The record before us fully sustains the conclusion of the trial court that the showing made by the plaintiffs was insufficient, under the rule just mentioned.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.